493 A.2d 111

Gerald M. LEIBOWITZ, Appellant,

v.

H.A. WINSTON COMPANY and Ross Bureau of Investigation.

Superior Court of Pennsylvania.

Argued March 11, 1985.

Filed May 17, 1985.

George J. O'Neill, Philadelphia, for appellant.

Peter J. Mooney, Philadelphia, for H.A. Winston, appellee.

Richard R. Galli, Philadelphia, for Ross, appellee.

Before McEWEN, CERCONE and TROMMER *, JJ.

CERCONE, Judge:

From July 1976 until February 1977, plaintiff-appellant Gerald M. Leibowitz was employed by a restaurant, defendant-appellee H.A. Winston and Company. He began his

---

* Judge Evelyn M. Trommer of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

employment as a substitute waiter and at the time he was discharged he was an assistant manager. On an evening in January 1976 when appellant reported to work, he was informed by another manager that approximately $250 was missing from a safe to which only appellant and four or five other individuals had access. After a search revealed nothing, appellant reported the fact of the missing money to a general manager.

Approximately two weeks later, on a Sunday night, appellant received a phone call at home from the owner of Winston's, Gerry Spivak. Appellant testified that Spivak told appellant of his concern about the missing money and that he had arranged for appointments for appellant and the other assistant manager to take lie detector tests the next day at Ross Detective Agency, defendant-appellee. Appellant testified that Spivak did not inform him of any rights to refuse the test, nor did appellant protest.[1] Assuming that he would pass the test, appellant went to the Ross Detective Agency.

He was given a paper to sign which he was told by the test administrator that he had to sign in order to take the test. This paper was a release of any liability of the appellees arising from appellants being tested.[2]

Appellant was asked if he read the release.

---

1.  "I didn't protest. I felt that, if I protested, that he would think I was guilty of something. I was very upset, though.... I felt as though, if I refused to take the test, naturally, one would think that somebody is guilty, if they don't want to take a test, you know. What do they have to hide? I had nothing to hide, but I was still very upset, because I had a lot of respect for Gerry Spivak, and I was very surprised that he would think, even consider, that I would take something from him and would ask me to take a test of this nature."

2.  I, Gerald M. Leibowitz, have been advised that under Section 7321 of the Act of December 1972 (# 334) of the Commonwealth of Pennsylvania statutes, I may not be required to take a Polygraph (lie detection) examination as a condition of my employment or continued employment. With full knowledge of these rights, and without duress, coercion, force, or promises of immunity or reward, I do hereby request a Polygraph examination to be given to me by an officer and/or employee(s) of the Ross Bureau of Investigation, Inc. for the mutual benefit of myself and H.A. Winston Co. as part of their security control system. I also authorize the Ross Bureau of Investi-

"Well, I looked over the paper. It was a lot of—at that time, it was legal jargon. I didn't really know what I was signing, but, I figured: I had nothing to fear. I wasn't concerned, the least bit, so, I figured, I have nothing to lose. I'm telling the truth."

Appellant was informed that he failed the test. Immediately he protested that there was a mistake, that he did not take the money. When he called Spivak and insisted that an error had been made, Spivak replied that the agency administering the test were professionals, that he had used them before, and that he would take their word for it.

The next day, appellant, accompanied by his mother, returned to the Ross Agency and insisted that the lie detector test be administered to him again. The result was the same. Subsequently, on his own initiative again, appellant was administered another test by a third party with

gation, Inc., its (sic) officers and/or employee(s) to disclose both orally and in writing, all information, results and opinions arising from said examination, to any and all interested persons including employee(s) and/or representatives of H.A. Winston Co. for whatever uses they may determine. Intending to be legally bound, I remise, release, waive and forever discharge all and each of the above corporations, firms and individuals from any and all actions or cause of action, claim or demand, liability or legal actions which I have now or may ever have resulting directly or indirectly or remotely both from my taking said examination and the oral and written opinions rendered because of said examination.

In witness whereof I have hereunto set my hand and seal

| Emily M. Wimberly | Gerald M. Liebowitz |
|---|---|
| Witnessed | (seal) Signature of person examined |

This examination was concluded at 11:15 a.m. on the above date. Having submitted myself freely to this examination, I hereby re-affirm my agreement as expressed above. I swear that during said examination, I was well treated and remained of my own free will, knowing that I could leave at any time I so desired. I also swear and certify that there were no threats or harm done to me or any promises made to me during the entire time I have been here, either in connection with the examination or the signing of this form.

| Emily M. Wimberly | (seal) Gerald M. Liebowitz |
|---|---|
| Witnessed | Signature of person examined |

favorable results.[3]   When appellant took these reports to Spivak, he nevertheless refused to let appellant work for him because his credibility was lost, according to Spivak.

Thereafter, appellant filed a complaint alleging numerous causes of action against both defendants: defamation, invasion of privacy, intentional infliction of emotional distress, negligence, violation of a criminal statute;  and wrongful discharge against H.A. Winston and Company above.  The case proceeded to trial by jury and at the close of appellant's case, the court entered an involuntary nonsuit as to both defendants.  It was on the basis of the two releases which were admitted into evidence by appellant that the nonsuit was granted.

The trial court held that appellant failed to meet his burden of invalidating the releases which he signed prior to and after being administered the lie detector tests.  The court acknowledged the public policy of Pennsylvania that an employee not be made to take a lie detector test as a condition of employment as contained in the Crimes Code, 18 Pa.C.S.A. § 7321(a):

A person is guilty of a misdemeanor of the second degree if he requires as a condition for employment or continuation of employment that an employee or other individual shall take a polygraph test or any form of a mechanical or electrical lie detector test.

However, the court found that only if appellant could present proof that the within releases from liability were signed as a condition of employment or continued employment would the releases be invalid.  The court concluded, following its reference to certain portions of appellant's testimony at trial, that, at most, appellant's reaction to taking the test

"demonstrates an uncommunicated subjective anxiety on plaintiff's part, which is far different from showing that the test was required, by Winston, as a condition of continued employment."

**3.**  Although the lower court prohibited the results from being admitted at trial over objection, the implication clearly is that appellant passed this third test.

Thus, because the court found that Leibowitz was unable to produce any evidence that his employer crossed the line from *using* the polygraph to *requiring* a polygraph test, it considered all of appellant's causes of action as insufficiently proved and entered the nonsuit as to both defendants and all causes of action.

In determining the propriety of an order entering a nonsuit, the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiff's favor. A nonsuit may only be entered in a clear case where the facts and circumstances lead unerringly to but one conclusion. (citations omitted.) *A.J. Aberman, Inc. v. Funk Bldg. Corp.*, 278 Pa.Super. 385, 393, 420 A.2d 594, 598 (1980).

Appellant argues on appeal that the trial court erred in refusing to allow his case to go to the jury on the issue of whether appellant signed the releases and took the test under a compulsion consisting of fear of losing his job if he refused. Moreover, appellant claims that the court should have declared the release forms to be invalid on their face as violative of the public policy expressed in the relevant criminal statute.

In *Polsky v. Radio Shack*, 666 F.2d 824 (3rd Cir.1981) the court reversed a grant of summary judgment because it concluded that there was a genuine issue of fact as to whether the plaintiff signed a release from liability for violation of the same anti-polygraph statute under threat of losing her job if she did not. The district court in concluding that the release advising her of her rights under § 7321 was valid in that she was not physically compelled to sign, stated that a plaintiff may not later renounce such a non-coerced release on grounds that she was compelled to sign it in order to preserve her job.

The Circuit Court rejected this traditional test for invalidating a release for reasons of duress, *see Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 431, 233

A.2d 519, 521 (1967), and held that where an employee can show compulsion under threat of job termination to sign a release from liability under the section prohibiting an employer from requiring an employee to submit to a polygraph examination "as a condition for employment or continuation of employment," the employee need not show duress to invalidate the release because it would contravene public policy of the state. *Polsky, supra,* at 829.

Initially, it must be stated that a recognized facet of public policy is indeed embodied in the anti-polygraph statute.[4] This was the conclusion of the court in *Perks v. Firestone Tire and Rubber Co.*, 611 F.2d 1363 (3rd Cir. 1979). Therein the court reversed a summary judgment in an employer's favor and held that the discharge of an employee-at-will because of his refusal to take a polygraph gave rise to a cause of action for tortious discharge under Pennsylvania law and because there was an issue of fact as to the reason for his discharge. *See also Molush v. Orkin Exterminating Co., Inc.*, 547 F.Supp. 54 (E D Pa 1982) (Former employee who alleged that he underwent polygraph exam at his employer's request and was dismissed due to results, has pleaded a valid cause of action for tortious discharge under the public policy embodied in Pennsylvania's antipolygraph statute.)

However, the crux of the issue in this case is to what extent at trial an employee-at-will must illustrate compulsion for a release which is signed prior to taking a lie detector test to be declared coerced as a condition of employment and therefore invalid. Stating it positively, may an employee-at-will ever be said to have released all rele-

---

4. In *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974) the court recognized an exception to the rule that no non-statutory cause of action exists for an employer's termination of an at-will employment relationship. Where a clear mandate of public policy is violated by the termination, the employer's right to discharge may be circumscribed. *See also, Reuther v. Fowler and Williams, Inc.,* 255 Pa.Superior Ct. 28, 386 A.2d 119 (1978) (Cause of action exists when employee is discharged for jury service.); *Cisco v. United Parcel Services,* 328 Pa.Superior Ct. 300, 476 A.2d 1340 (1984) (no cause of action when employee is discharged for employment related crimes even though later acquitted in jury trial.)

vant parties from liability when he is requested, as in this case, to take a lie detector test by his employer?

In certain scenarios the answer to this second question must clearly be yes. It is conceivable that an employee himself would request an opportunity to be examined by means of a polygraph. Or, if an employer clearly states to the employee that he may refuse to take the test without fear of losing his job on that ground, such lack of compulsion is evident. However, as to the first question regarding what an employee is required to show in order to give rise to a possible inference of compulsion in the fact-finder's determination, the parameters are not so clear. The reason for this can be seen in light of the purpose behind the antipolygraph statute as expressed by the Supreme Court of New Jersey regarding a statute similar to the Pennsylvania law. As cited in *Perks v. Firestone, supra,* at 1365–6:

> There is no judicial control when an employer subjects his employee to a lie detector test and there is no licensing or other objective method of assuring expertise and safeguard in the administration of the test and the interpretation of its results. Nor is there any assurance of true voluntariness for the economic compulsions are generally such that the employee has no realistic choice. Organized labor groups have often expressed intense hostility to employer requirements that employees submit to polygraph tests which they view as improper invasions of their deeply felt rights to personal privacy and to remain free from involuntary self-incrimination. *State v. Community Distributors, Inc.,* 64 N.J. 479, 317 A.2d 697, 699 (1974).

Viewed in the light most favorable to appellant, the evidence is that appellant after failing out of Temple Medical School, began working for Winston's as a substitute waiter. In a few short months he had arisen to assistant manager status, still under at-will employment. He was called at home on Sunday evening and told by his employer that an appointment had been made for him the next morning to take a polygraph regarding money missing at work. Appellant went to the Ross Agency and signed the

within release having been told he will not be able to take the test unless he signs it. The court viewed this evidence as insufficient to establish an inference that the release was signed under threat of job termination. We disagree.

Appellant, unlike the plaintiff in *Polsky, supra,* did not testify that he was told by his employer that unless he took the test, he would lose his job. However, a jury does not need such direct evidence in order to draw a reasonable inference that compulsion may have been present. We are not concluding that the evidence does support such an inference, but only that it may. A jury should decide whether the release was valid or not. As this court has said

> "[w]here there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the counter-vailing proof." *Beary v. Penna. Electric Co.,* 322 Pa.Superior Ct. 52, 57, 469 A.2d 176, 179 (1983).

Thus, appellant must be afforded such a determination by a jury.

Appellees rely on the proof which is usually necessary in order to invalidate a release, as in *Carrier v. William Penn Broadcasting Co., supra.* More specifically, they quote the language that mere economic or financial pressure does not suffice to invalidate a release. This is true in the situation where parties are dealing as equals, as in *Carrier* and as in *Employers Liability Assurance Corp. v. Greenville Business Men's Assoc.,* 423 Pa. 288, 224 A.2d 620 (1966). However, the parties in this case stand in substantially different positions to each other, as did the parties in *Polsky, supra.* The court in that case noted our decision in *Phillips Home Furnishings, Inc. v. Continental Bank,* 231 Pa.Superior Ct. 174, 181–2, 331 A.2d 840, 843–4 (1974), rev'd on other grounds, 467 Pa. 43, 354 A.2d 542 (1976) in which an exculpatory clause asserted by a bank as a defense against allegations of negligence was held invalid. This court said, regarding such clauses:

> Where a disparity of bargaining power has grown out of economic necessity for certain goods or services or from a

monopolistic position of a seller, courts have found exculpatory agreements inimical to the public interest. Where an agreement does not represent a free choice on the part of the plaintiff, where he is forced to accept the clause by the necessities of his situation, courts have refused to enforce such agreements as contrary to public policy. *Id.*, 231 Pa.Superior Ct. at 181, 331 A.2d at 843.

We find this reasoning persuasive and analogous to the instant situation. Appellant was able to show that he was told to take the test, at what time and where to take it. The test administrator required him to sign the release in order to take the test. Given the disparate positions of power of appellant and Winston's, unless appellant testified that he requested the test or that his employer assured him that it was not necessary that he take it as a condition of employment, the issue of whether he signed the releases out of compulsion should have been given to the jury. We refuse to exalt the release above the circumstances surrounding its signing.

Therefore, the order of the trial court refusing to take off the nonsuit is vacated. Case remanded with direction that nonsuit be taken off. New trial granted. Jurisdiction relinquished.