584 A.2d 973

Gary M. RIZZO and Colleen P. Rizzo, H/W

v.

Andrianna Becker MICHENER and J.C. Ehrlich Co., Inc. d/b/a Taylor Exterminating.

Appeal of J.C. EHRLICH CO., INC. d/b/a
Taylor Exterminating.

Gary M. RIZZO and Colleen P. Rizzo, H/W, Appellants,

v.

Andrianna Becker MICHENER and J.C. Ehrlich Co., Inc., d/b/a Taylor Exterminating.

Superior Court of Pennsylvania.

Argued Oct. 28, 1990.

Filed Dec. 28, 1990.

48

Randolph A. Scott, Warrington, for Ehrlich, appellants (at 1464) and appellees (at 1558).

Peter M. Hileman, Doylestown, for Rizzo, appellants (at 1558) and appellees (at 1464).

Stephen G. Maliszewski, Quakertown, for Michner, appellees (at 1464 and 1558).

Before CAVANAUGH, TAMILIA and HESTER, JJ.

CAVANAUGH, Judge:

Gary M. Rizzo and his wife, Colleen P. Rizzo, purchased real estate in Bucks County, Pennsylvania. The Agreement of Sale was signed in January, 1987 and settlement took place in April, 1987, at which time the buyers were represented by an attorney. The purchase price of the real estate was $115,000.00 and it included a one-story ranch house and four and one-half acres of land. The Agreement of Sale had a termite inspection clause, and the seller, Andrianna Becker Michener, hired J.C. Ehrlich Company, Inc., which did business as the Taylor Exterminating Company, to perform the termite inspection. The report stated "no visible evidence of infestation from wood destroying insects was observed." It also noted that areas of the property were "obstructed or inaccessible" and the "rear crawlspace was inaccessible." Shortly after settlement, Mr. Rizzo, who worked as a carpenter, was about to embark on extensive renovations to the property when he noticed flying insects. Subsequent investigation disclosed extensive termite damage to the house.[1] The damage was so great that the Rizzos decided to demolish the house and build a new structure.

The Rizzos commenced an action against Andrianna Becker Michener and J.C. Ehrlich Company, Inc., d/b/a Taylor Exterminating Company. The action against J.C. Ehrlich Company set forth four causes of action for negligence,

[1] About a month after the Rizzos purchased the property, they brought an action before a District Justice because of a leak in the roof.

breach of contract, violation of the Unfair Trade Practices and Consumer Protection Law, and interference with the possession of real estate. The action against Ms. Michener alleged interference with the possession of real estate, fraud, and intentional infliction of emotional distress.

The matter was tried before Kelton, J. and a jury in September, 1989. At the conclusion of the plaintiff's case, J.C. Ehrlich Company moved for a nonsuit as to three of the four causes of action against it. The motion for nonsuit on the theory of breach of contract and violation of the Consumer Protection Act was denied but the court refused to charge the jury on alleged violations of the Consumer Protection Law. A nonsuit was granted as to the count claiming interference with the possession of real estate. A nonsuit was also entered in favor of Ms. Michener on the counts alleging interference with the possession of real estate and intentional infliction of emotional distress. A verdict was entered in favor of the Rizzos against J.C. Ehrlich Company, only, in the amount of $100,696.00.[2]

J.C. Ehrlich Company filed a motion for new trial. The Rizzos filed a petition to mold the jury verdict, requesting damages under Pa.R.C.P. 238, and also triple damages and attorney's fees under the Consumer Protection Law. The court below denied the motion of J.C. Ehrlich Company, Inc. for a new trial and the Rizzos' request for damages under the Consumer Protection Law. However, delay damages were granted under Pa.R.C.P. 238 in the amount of $13,-071.91. Cross appeals were subsequently filed by the Riz-

2. While the complaint alleged breach of contract in Count II, it is clear that the verdict against J.C. Ehrlich Co. was based solely on the negligence of that company. The court below, in instructing the jury, stated:

> There is an alternative theory under which the plaintiffs are pursuing and that is what we call a contract theory, *not just negligence but the failure to perform a contract but what it really boils down to is the same thing. That is, was the inspection negligent or careless,* was it done in a workmanlike manner which is the contract standards what we are really talking about, the same thing. (Emphasis added.)

zos and J.C. Ehrlich Company with this court, and they have been consolidated.

The first issue is whether the court below erred in refusing to submit the question of contributory or comparative negligence on the part of the plaintiffs, the Rizzos, to the jury. Counsel for J.C. Ehrlich Company objected to the charge, as it did not refer to the issue of comparative or contributory negligence. The court, in its opinion, concluded that since there was no evidence of contributory negligence the trial court was not required to instruct the jury on the issues of comparative or contributory negligence.[3]

█ The court properly refused to charge on the issue of comparative negligence.[4] The Pennsylvania Comparative Negligence Act only applies to negligence resulting in death or injuries to persons or damage to property. There must be a tortious episode which causes damage to tangible real

3. Prior to the charge, the trial court stated in discussing the issues of comparative and contributory negligence:

THE COURT: Nobody disclosed that the damages were readily observable by a lay person. To the extent of the observation of the existence of termites there may be an inference that Mrs. Michener may have seen it because she maybe should have seen swarms and there is also testimony that if somebody jumped up and down on the floor they could have seen the bounce but I don't think that the purchaser of the house is charged with the duty to bounce up and down on every floor in the house.

MR. SCOTT [Counsel for J.C. Ehrlich Co., Inc.]: Mr. Rizzo had testified that if he had looked under there knowing the damage he discovered later, he would have seen the damage, would have known it was damage and I think—

THE COURT: Mr. Hileman, if you object to my charge on comparative negligence the objection is sustained.

MR. HILEMAN: [Counsel for the Rizzos]: I object, Your Honor.

4. The Pennsylvania Comparative Negligence Act provides at 42 Pa.C.S. § 7102(a):

(a) General Rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the casual negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

or personal property. *Wescoat v. Northwest Savings Association*, 378 Pa.Super. 295, 548 A.2d 619 (1988). *See also, Butler v. Flo–Ron Vending Co.*, 383 Pa.Super. 633, 557 A.2d 730 (1989). In *Wescoat, supra,* we held that the comparative negligence statute did not apply to a negligence action wherein the defendant failed to procure an insurance policy for the plaintiff and failed to notify the plaintiff that the insurance was not obtained. We determined that while the plaintiff had suffered a financial loss since he could not receive reimbursement from a non-existent disability insurance policy, this was not the type of injury to property contemplated in the act. We further held in *Wescoat, supra,* that since the comparative negligence statute did not apply, we must revert to the doctrine of contributory negligence which completely bars the plaintiff from recovery, if his negligence contributed to the result.

In the instant case, the alleged negligence by the defendant in not discovering the termites did not in any way result in the termite damage. The damage was done prior to the inspection as the evidence pointed to long existent termite damage. The negligence complained of by J.C. Ehrlich Company was that it failed to "discover the extensive evidence of termite damage." The failure to charge on the comparative negligence statute was proper as it was not applicable.

 The error by the court below was in failing to charge on the issue of plaintiffs' contributory negligence. The existence of negligence is usually a question to be submitted to the jury upon proper instructions and the trial court should not remove the issue unless the facts leave no room for doubt. *East Texas Motor Freight, Diamond Division v. Lloyd,* 335 Pa.Super. 464, 484 A.2d 797 (1984). The charge of the trial court should not exclude any theory or defense that has support in the evidence. *Gallo v. Yamaha Motor Corp. USA,* 363 Pa.Super. 308, 526 A.2d 359 (1987). As noted in *Robinson v. City of Philadelphia,* 329 Pa.Super. 139, 148, 478 A.2d 1, 5 (1984): "If there is any

evidence of contributory negligence, it would be an error not to charge the jury on the issue."

■ There was evidence that the plaintiffs' own lack of care in examining the house they purchased, coupled with the fact that the termite inspector allegedly did not have access to the rear crawlspace when he made the inspection, contributed to their loss. While there was evidence of negligence on the part of the termite exterminating company, there was also evidence of negligence on the part of the purchasers.

Mr. Rasbold, the representative of J.C. Ehrlich Company who made the inspection in connection with the termite certification required in the agreement of sale, testified that on the date of the inspection Mrs. Michener, who was then known by the name of Andrianna Becker, would not allow him access to the rear crawlspace space, which had a door approximately 30″ × 30″. According to Mr. Rasbold, the door had a padlock on it, which was locked, and Ms. Becker did not know if she had a key. When Mr. Rasbold told her that he had to gain access for the inspection, she said, "There is no way. It is winterized. It is all sealed up." Since Mr. Rasbold could not inspect the rear crawlspace, he noted in his report that the "rear crawlspace was inaccessible." The report also noted that there was an area of the property that was obstructed or inaccessible. The house was a one-story building and the principal termite damage appears to have originated from a rotted tree stump located in the rear crawlspace over which the back part of the house was built.

Mr. Rasbold did not suspect that termites were present in the rear crawlspace. He testified as follows:

A. I wasn't suspicious but what I wanted to cover was getting the inspection form to be aware that that crawlspace hadn't been inspected. *That would turn the yellow light on for them to proceed further.*

56

(Emphasis added.) [5]

The Rizzos made five trips to Ms. Michener's home before the settlement. Mr. Rizzo was aware of the door to the rear crawlspace and testified at trial that although the door had padlock on it, it was not locked. He noticed the door to the crawlspace on his first visit to the property. Nothing prevented Mr. Rizzo from opening the door to the rear crawlspace and looking in. Ms. Michener stored wine in the crawlspace so that access to it would have been possible. The joists over the crawlspace were badly deteriorated. Mr. Parker, an entomologist, testified at trial as an expert on behalf of the Rizzos. He was questioned whether a layman would have discovered the presence of termites if he had looked in the crawlspace. His testimony was as follows:

Q. Did it require, in your opinion, an expert to determine that those joists were damaged or is it something that any lay person could have seen?

A. I believe a lay person could have seen that there was something wrong with those wooden elements of the house.

Mr. Parker testified that the rear crawlspace was about three feet high, and "it's pretty easy to get around in there." Mr. Rizzo observed the door to the rear crawlspace on the occasion of his first visit to the property. At that time it was covered in plastic and although there was a padlock on the door, it was not locked. He never asked Ms. Michener if he could look in the crawlspace.

Not long after moving into the house, Mr. Rizzo planned on making extensive renovations. Before commencing work, he noticed insects, which he referred to as flying ants, in the rear of the house. He was concerned and contacted J.C. Ehrlich Company. Mr. Rasbold came to the

5. The Rizzos were concerned about the presence of termites. Mrs. Rizzo testified:

If there were termites, then we definitely would have looked at either not buying the house or getting further inspections made to see how bad of a problem it was, and maybe just offer less money.

house in May, 1987 and told Mr. Rizzo that he had been there for a termite inspection a few months before. Mr. Rasbold then entered the rear crawlspace through the door and inspected the area. After making the inspection, Mr. Rasbold told Mr. Rizzo about the serious termite condition in the crawlspace and the existence of the tree stump which was located there. Mr. Rizzo testified:

> I asked Mr. Rasbold why he hadn't noticed this in his first inspection. And he gave me no legitimate answer. He just said that he hadn't noticed it, and that the crawlspace was inaccessible. He said he had noted that on his report.

Shortly thereafter, Mr. Rizzo entered the crawlspace and testified concerning his observations:

> In the same area where the window was to go, I observed several joists, almost each joist in that area to be eaten a minimum of a foot back as badly as that wood is eaten right there. Also, the center beam that runs the full length of the house from end to end was terribly eaten in that area.
>
> There was a tree stump that was a dirt floor in the crawlspace [sic]. There was a tree stump that was left there, the house was built over, that was literally just bark. It could be removed by your hand. You could touch it, it would crumble, just as that wood will if you were to squeeze it in your hand.

Although Mr. Rizzo was a chef by training, he also worked as a carpenter and planned to make alterations on the house himself. He was familiar with construction work and if he had taken the trouble to open the door to the crawlspace and look inside, he would have seen the extensive damage to the joists. The expert witness for the Rizzos testified that a layman would have observed the termite damage.

At settlement, the Rizzos were represented by a lawyer. They had a termite inspection report which stated that the rear crawlspace had not been inspected, as it was inaccessible. While there was evidence that it was inaccessible to

Mr. Rasbold on the date of his inspection in January, 1986, it was not inaccessible to Mr. Rizzo, by his own testimony.

■ The Rizzos were sensitive to the effect of termite damage, and if they had any suspicion that termites were present, they might not have purchased the house. While they knew that the termite inspection did not include the rear crawlspace, they made no effort to open the door and look into the area. Mr. Rizzo testified to the extensive damage he observed to the joists when he went into the crawlspace. There was sufficient evidence of negligence by the buyers, Mr. and Mrs. Rizzo, to submit the issue to the jury. Even minimal evidence of contributory evidence requires a charge on the issue. *Levine v. Rosen,* 394 Pa.Super. 178, 575 A.2d 579 (1990). If there was some evidence of contributory negligence produced in any of the evidence, whether offered by the plaintiff or the defendant, it is reversible error not to charge the jury on the issue. *McCullough v. Monroeville Home Association,* 270 Pa.Super. 428, 411 A.2d 794 (1979); *Morganstein v. House,* 377 Pa.Super. 512, 547 A.2d 1180 (1988). It does not matter how slight the evidence of the plaintiffs' contributory negligence is. *Binder v. Jones & Laughlin Steel Corp.,* 360 Pa.Super. 390, 520 A.2d 863 (1987). The court below erred in not charging on contributory negligence and a new trial is required as to the defendant, J.C. Ehrlich Company, Inc. Any contributory negligence by the plaintiffs would be a complete bar to recovery.

■ The court below properly entered a nonsuit as to J.C. Ehrlich Company, Inc. relating to Count IV of the Rizzos' complaint, which alleged that the defendant interfered with possession of their real estate.[6] A compulsory

6. Count IV of the complaint alleged, *inter alia:*
 *RIZZOS v. EHRLICH AND BECKER—Interference with Possession of Real Estate*

 37. The conduct of the Defendants interfered with the Plaintiffs' peaceful possession of their real estate, entitling them to recovery of damages for the inconvenience, discomfort and related expenses which resulted from the Defendants' conduct.

nonsuit may be entered at the close of the plaintiff's case on liability where the plaintiff has failed to establish a right to relief. A motion for compulsory nonsuit allows a defendant to test the sufficiency of the plaintiff's evidence. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977); *Target Sportswear, Inc. v. Clearfield Foundation*, 327 Pa.Super. 1, 474 A.2d 1142 (1984). It may be granted only in cases where it is clear that a cause of action has not been established and the plaintiff must be given the benefit of all favorable evidence together with all reasonable inferences of fact arising from the evidence, resolving any conflict in the evidence in favor of the plaintiff. *Storm v. Golden*, 371 Pa.Super. 368, 538 A.2d 61 (1988); *Leibowitz v. H.A. Winston Co.*, 342 Pa.Super. 456, 493 A.2d 111 (1985). If a jury, viewing the evidence in the light most favorable to the plaintiff, could not reasonably determine that all of the elements of the cause of action were established, a compulsory nonsuit is appropriate. *Durkin v. Equine Clinics, Inc.*, 376 Pa.Super. 557, 546 A.2d 665 (1988); appeal denied 524 Pa. 608, 569 A.2d 1367 (1989).

The court properly entered a nonsuit as to this count. There was no evidence that the termite report by J.C. Ehrlich Company interfered with the Rizzos' peaceful possession of their real estate. The termite damage existed long before the termite inspection and report, and no action or lack of action by J.C. Ehrlich Company caused the termite damage or interfered with the Rizzos' possession of their real estate.

Nonsuit was also properly granted on the count alleging intentional infliction of emotional distress. The complaint alleged in paragraph 45 that "Becker [Michener] intended to cause emotional harm to the Rizzos." There was no evidence whatsoever that this occurred. In order to sustain a cause of action of this type, it must be shown that the defendant engaged in extreme and outrageous conduct. *Reimer v. Tien*, 356 Pa.Super. 192, 514 A.2d 566 (1986). The essential outrageous conduct must amount to a "major outrage." *Lazor v. Milne*, 346 Pa.Super. 177, 499 A.2d 369

(1985). It is for the court to determine in the first instance whether the defendant's conduct can reasonably be regarded as so outrageous as to permit recovery. *Daughen v. Fox,* 372 Pa.Super. 405, 539 A.2d 858 (1988); appeal denied 520 Pa. 605, 553 A.2d 967 (1988). The court properly determined that there was no reasonable basis on which the issue of intentional infliction of emotional distress could be submitted to the jury.

The court also properly refused to submit the issue of punitive damages to the jury. Such damages are permitted only for conduct that is outrageous due to the defendant's evil motive or reckless indifference to the rights of others. *Hoffman v. Memorial Osteopathic Hospital,* 342 Pa.Super. 375, 492 A.2d 1382 (1985).[7] The trial judge must determine in the first instance whether the plaintiff has presented sufficient evidence to support a punitive damage claim, which requires evidence on which the jury might reasonably conclude that outrageous conduct has been established by a preponderance of the evidence. *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985). Even where the seller of real estate minimized termite damage by misrepresenting its seriousness and the extent that it had been remedied, and there was evidence of fraud, we held that the evidence was inadequate to support

7. Restatement (Second) of Torts § 908 defines punitive damages and that section has been adopted as the law of Pennsylvania. *Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984).

Section 908 of the Restatement provides, *inter alia:*

Punitive damages are damages ... awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.

Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

Restatement (Second) of Torts, § 908(1), (2). Comment (b) to Section 908 provides that:

[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, *these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime.* (Emphasis added.)

an award of punitive damages. *Smith v. Renaut,* 387 Pa.Super. 299, 564 A.2d 188 (1989).

Finally, the court properly refused to charge on the Unfair Trade Practices and Consumer Protection Law, 73 Pa.S. § 201–1, *et seq.* The Act, *inter alia,* prohibits "engaging in … fraudulent conduct which creates a likelihood of confusion or misunderstanding." 73 Pa.S. § 201–2 (XVII).[8] There was no evidence that J.C. Ehrlich Company, by its agent, Mr. Rasbold, engaged in fraudulent conduct. While there was evidence of negligence on the part of J.C. Ehrlich Co. in the termite inspection, the report unequivocally stated that the rear crawlspace, which was the principal source of the termite infestation, was not inspected as it was not accessible. The basic policy of the Consumer Protection Law is to prohibit unfair methods of competition and unfair or deceptive practices in the conduct of a trade or commerce. *Pennsylvania Retailers Association, Reliable, Inc. v. Lazin,* 57 Pa.Cmwlth. 232, 426 A.2d 712 (1981). The key to invoking § 201–2 (XVII) of the Consumer Protection Law is fraud, and the essential elements of fraud were lacking. Actual fraud has five elements which must coalesce. There must be (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result. *Kuehner v. Parsons,* 107 Pa. Cmwlth. 61, 527 A.2d 627 (1987). The necessary elements of fraud were lacking and the court properly refused to charge on the issue of alleged violation of the Consumer Protection Law.

Judgment in favor of Gary M. Rizzo and Colleen P. Rizzo and against J.C. Ehrlich Company, Inc. reversed, and new trial granted as to J.C. Ehrlich Company, Inc., only.

---

**8.** The Act provides for treble damages and payment of counsel fees by one engaging in activities proscribed by the Act. The Rizzos requested the court below to mold the jury's verdict to $432,493.53 based on treble damages and counsel fees, which the court refused to do. The Rizzos paid $115,000.00 for the house and 4½ acres of land.

62

All other orders are affirmed.
We relinquish jurisdiction.

HESTER, J. concurs in the result.