NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1252
_____

DAVID CAUVEL,
Appellant

v.

SCHWAN'S HOME SERVICE, INC.,
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1-08-cv-00134)
Magistrate Judge: Honorable Susan Paradise Baxter
_____

Argued November 15, 2011

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
and JONES, II,[*] <u>District Judge</u>

(Opinion filed: January 20, 2012)
_____

John D. Newborg, Esq.     [ARGUED]
428 Forbes Avenue
Lawyers Building. Suite 220
Pittsburgh, PA  15219
   *Counsel for Appellant*

_____

[*] Honorable C. Darnell Jones, II, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Charles H. Saul, Esq.
Liberty J. Weyandt, Esq.    [ARGUED]
Margolis Edelstein
525 William Penn Place
Suite 3300
Pittsburgh, PA  15219
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JONES, II, District Judge

While employed as a manager by Appellee Schwan's Home Service, Appellant David Cauvel refused to submit to a polygraph test concerning recurring company thefts. Schwan's subsequently alleged violations of corporate policy resulting in property loss, and terminated Cauvel's employment.  Cauvel appeals the District Court's grant of summary judgment in favor of Schwan's on his wrongful termination claim under the Pennsylvania anti-polygraph statute, 18 Pa. Cons. Stat. § 7321.[1]  Specifically, he challenges the Court's conclusion that there was no genuine issue of material fact as to whether Schwan's required Cauvel to take the polygraph test or removed him from his position because he refused to do so.  For the reasons that follow, we reverse and remand for further proceedings.

_____

[1] Although Schwan's filed a Counterclaim in this action, the District Court certified that its December 31, 2010 decision granting Schwan's summary judgment on Cauvel's wrongful termination claim could be appealed immediately, without waiting for resolution of the Counterclaim.

## I.    BACKGROUND

We write principally for the benefit of the parties and recite only the essential facts and procedural history.

Schwan's provides home delivery of food products by truck to residential customers; as a Depot Manager, Cauvel supervised delivery drivers who collected and deposited invoice payments from customers. When discrepancies began to appear in the deposits, Schwan's notified the State Police, which interviewed a number of employees, including Cauvel, at the company's Erie, Pennsylvania facility in October 2007. At the same time, Schwan's conducted its own internal investigation, assisted by Loss Prevention Specialist Georgia Tirrel, Human Resources representative Barry Adams and Division Manager Gary Danbrook.

On October 18, 2007, Cauvel was asked to take a polygraph test, as were other Schwan's employees; he failed to appear for the test at the police barracks as scheduled on October 26, 2007. Five days later, Schwan's suspended Cauvel from his position. After further investigation, Schwan's found that Cauvel had condoned or participated in the violation of Schwan's banking and loss prevention policies. On December 4, 2007, Danbrook and Adams informed Cauvel that he was being removed from his position as Erie Depot Manager; instead, he was offered a position in Westmoreland, New York, or a sales position in a location other than Erie. Neither position was a management position. Cauvel rejected both offers and resigned his employment.

**II.    DISCUSSION**

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.  Our review in the summary judgment context is plenary.  Thus, "we are required to apply the same test that the district court should have utilized initially." *Jackson v. Danberg*, 594 F.3d 210, 215 (3d Cir. 2010) (quotation marks and citation omitted).  Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Under the Pennsylvania anti-polygraph statute, an employer is prohibited from "requir[ing] as a condition for employment or continuation of employment that an employee…shall take a polygraph test or any form of mechanical or electrical lie detector test." 18 Pa. Cons. Stat. § 7321.[2]  The District Court granted summary judgment based on the conclusion that there was no evidence from which a jury could conclude Schwan's terminated Cauvel's employment because he refused to take a polygraph test.

However, we cannot credit the District Court's conclusion here, given Cauvel's deposition testimony and proffered email evidence.  Specifically, Cauvel has alleged the following in support of his contention that Schwan's "required" him to sit for the polygraph or else relinquish his employment:

---

[2] An employer's violation of the anti-polygraph statute constitutes a wrongful discharge under the public policy exception to the at-will employment doctrine. *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363, 1366 (3d Cir. 1979).

- On October 17, 2007, Danbrook and Adams—not State Police—told Cauvel that he was to report to the State Police Barracks and submit to a lie detector test (App. 504);

- On October 18, 2007, Hirsch and Danbrook reiterated to Cauvel that he was to report to the State Police Barracks and submit to a lie detector test (App. 505);

- On October 19, 2007, Tirrel emailed Danbrook to ask if Cauvel was aware of the schedule for the polygraph, and Danbrook responded that he had "suggested" to Cauvel that Cauvel take the polygraph in order to "clear his name" (App. 474);

- When Cauvel failed to appear for the polygraph, a State Police officer called Tirrel, not Cauvel (App. 506);

- On October 27, 2007, Danbrook emailed Cauvel to tell him that Danbrook, Tirrel and Adams did not want Cauvel to mention that he chose not to take the polygraph, since "that way we can still get some of the [other employees] set up to take one." (App. 413);

- On October 29, 2007, Tirrel emailed Danbrook that he "need[ed] to speak to Dave [Cauvel] about taking the polygraph" because Cauvel's "position could depend on it. Right now with refusing it makes him look guilty. Delete message." (App. 471);

- That same day, Danbrook emailed Cauvel asking him to "reconsider taking the polygraph, as you can see it would clear you right away." (App. 471);

- On his last day of work, Cauvel asked Danbrook: "If I had taken the polygraph, would I be in this situation?" Danbrook replied, "No, that's why we wanted you to take it." (App. 509);

- Around the same time, Cauvel asked Danbrook's supervisor Charles Hirsch, "Chuck, if I would have taken the polygraph would things–you know, would that have helped me?" Hirsch allegedly responded, "Well, I believe it would have helped. But it[']s too late now." (App. 509-10); and

- Hirsch admitted that he told Cauvel that he "thought that polygraphs had been used for years and they must be indicative of something" (App. 479).[3]

Schwan's disputes Cauvel's deposition testimony by way of affidavits from State Police officers, Tirrel, Adams and Danbrook, all attesting that 1) the State Police alone requested and scheduled Cauvel's polygraph test; and 2) no Schwan's representative ever requested or demanded that Cauvel take such a test. Furthermore, Schwan's vigorously contests the authenticity of the October 19 and 29, 2007 emails. Indeed, Schwan's added a fraud count against Cauvel in its Amended Counterclaim, alleging that Cauvel fabricated these emails.

Nonetheless, the District Court found it "unnecessary to resolve this [authenticity] dispute because the emails, even if accepted as genuine, fail to satisfy Plaintiff's burden of showing that Defendant required him to submit to a polygraph test as a condition of his

---

[3]Contrary to Schwan's arguments, Hirsch and Danbrook's alleged statements regarding the conditions of Cauvel's continuation of employment do not constitute inadmissible hearsay, but rather non-hearsay admissions of an agent of a party opponent. *See* Fed. R. Evid. 801(d)(2).

6

continued employment." *Cauvel v. Schwan's Home Services, Inc.*, No. 08-0134, 2010 WL 5476698, at *6 n.3 (W.D. Pa. Dec. 31, 2010).  The District Court similarly found that even if Cauvel's "other 'urgings' allegedly expressed by Defendant's management employees made him feel pressured to take a polygraph test," they did "not rise to the level of requiring Plaintiff to take a polygraph test as a condition of his continued employment."  *Id.* at *6.

Relying on case law preserving a plaintiff's wrongful discharge claim pursuant to the anti-polygraph statute, the District Court concluded such a claim could only survive summary judgment where the polygraph test "was specifically requested by the employer."  *Id.* (citing *Perks*, 611 F.2d at 1366; *Leibowitz v. H.A. Winston Co.*, 493 A.2d 111, 116 (Pa. Super. Ct. 1985); *Molush v. Orkin Exterminating Co.*, Inc., 547 F. Supp. 54, 55 (E.D. Pa. 1982)).  The District Court did not, however, account for a scenario whereby the police may tender the actual request for the polygraph to the employee, but the employer remains the driving force behind the request.  The cases cited by the District Court do not foreclose the possibility of a wrongful discharge claim in the face of an employer's compulsion to sit for a polygraph requested or administered by a different entity.  *See Perks*, 611 F.2d at 1366 (summary judgment for employer precluded by genuine issues of material fact concerning reasons for employee's discharge); *Leibowitz*, 493 A.2d at 115 (question of whether employee terminated after failing polygraph was coerced into releasing employer from liability under anti-polygraph statute was one for jury; while appellant "did not testify that he was told by his employer that unless he took the test, he would lose his job…a jury does not need such direct evidence in order to draw

7

a reasonable inference that compulsion may have been present."); *Molush*, 547 F. Supp. at 56 (denying motion to dismiss because if plaintiff can "establish a causal connection between his polygraph examination and his dismissal there is ample legal authority to support his tort action against his employer.")[4]

Taken together, Cauvel's deposition testimony and proffered emails created a disputed material fact as to whether Schwan's did indeed "require" Cauvel to submit to a polygraph test in order to retain his position, and in turn whether his termination was in fact related to his refusal to take the test. While the State Police may have requested and/or sought to administer the test, a reasonable jury could find that the pressure and implicit warnings from Schwan's supervisors amounted to a *de facto* "requirement."

Having reviewed Cauvel's deposition testimony and documentary evidence in the light most favorable to him, we cannot agree that there is no genuine issue of material fact. We therefore reverse the judgment of the District Court and remand for further proceedings.

---

[4] The District Court here seems to suggest that Cauvel's claim could not survive summary judgment because the police, not Schwan's, would have administered his polygraph. *Cauvel*, 2010 WL 5476698 at *7 (citing *Wright v. Commonwealth of Pennsylvania*, 465 A.2d 1075 (Pa. Commw. Ct. 1981)). This interpretation would render the statute toothless; we can easily imagine an employer contacting the police and requesting that the police administer a polygraph test to an employee, then terminating that employee without consequence should the employee refuse the test.