# Pardee *versus* Orvis.

1. By virtue of the Act of February 25th 1859 (P. L. 83), whereby commissioners were appointed to "correctly run and mark distinctly the boundary line or lines between the counties of Centre and Clinton," said commissioners had the power, and it was their duty, to run and mark said boundary line where it ought of right to have been, without regard to previous surveys or marks of said boundary line made under prior Acts of Assembly. Said commissioners having lawfully performed said duty, their report became under the terms of said Act of 1859, "final and conclusive," and the boundary line so run and marked cannot be impeached by the owners of lands affected thereby.

2. Where, in action of ejectment, the only question of title was, whether a definitely located tract of land was in Clinton county or in Centre county—there being no dispute as to the position of the tract and of the said boundary line on the ground—the question is one for the court, who should direct a verdict for the party entitled by law to recover. Where in such a case, the court, while virtually instructing the jury that the plaintiff was entitled to recover, submitted the case to the jury, who, contrary to the instruction of the court, brought in a verdict for the defendants, which the court refused to accept, and the court thereupon directed a verdict to be entered for the plaintiff:

*Held,* that such action of the court, while technically irregular, did no injury to the defendant, and did not constitute cause for reversal.

3. The refusal of a point which might properly have been affirmed, but the affirmance of which would not have benefited the party submitting it, is not cause for reversal of the judgment against said party.

April 26th 1883. Before MERCUR. C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Clinton county:* Of July Term 1882, No. 190.

Ejectment, by Ellis L. Orvis against Ario Pardee and R. G. Cook, for a tract of land, described in the writ as situated in Beech Creek township, Clinton county, being part of a tract known as the Rebecca Kelso tract.

[Pardee *v.* Orvis.]

The defendants disclaimed as to a part of the tract admitted to be situated in Clinton county, and pleaded not guilty as to the residue, which they claimed was situated in Centre county.

There was no question as to the location of the tract on the ground, the sole question being whether the whole or only a part of it was within the limits of Clinton county.

On the trial, before MAYER, P. J., the plaintiff showed title to the tract in dispute under a treasurer's sale thereof for taxes, for 1874 and 1875, assessed and sold as situate in Clinton county, and purchased by James David, who received a treasurer's deed for the same, and who subsequently conveyed his title to the plaintiff.

The material facts, and the several Acts of Assembly relied upon at the trial are set forth in the following charge of the court :—Unless that portion of the Rebecca Kelso tract, which was purchased by James David on the twelfth day of June, 1876, lay within the boundaries of Clinton county, at the time it was assessed and sold by the treasurer, James David acquired no title by virtue of that sale, as the treasurer had no authority to sell it. The authority of the assessor to assess, and the treasurer to sell, would not extend to land lying beyond the limits of Clinton county. If the Rebecca Kelso tract of land was wholly situate in Centre county at the time of said assessment and sale, neither James David nor his grantee, Ellis Orvis, would acquire any title to that portion of said tract sold in Clinton county.

[So far as the assessment of that portion of the Kelso tract, which it is claimed lies in Clinton county, we have no hesitation in saying to the jury, that the evidence offered by the plaintiff, in support of the assessment, shows that there was a sufficient assessment of this tract in Clinton county to authorize a sale of it by the treasurer, if that portion of it which was assessed lay within the limits of Clinton county.]

And this brings us to the real question in controversy in this suit—that is, whether that portion of the Rebecca Kelso tract, which was assessed and sold by the treasurer of Clinton county to James David, lay within the territory of Clinton county ? In order to determine this question, it will be necessary to refer to the various Acts of Assembly which have been offered in evidence, the Act of Assembly creating the county of Clinton, and the several Acts of Assembly authorizing commissioners to fix the boundary line between the counties of Centre and Clinton. The county of Clinton was, by an Act of Assembly approved the twenty-first day of June, 1839, erected out of parts of Centre and Lycoming counties. This Act of Assembly prescribes the boundaries, and authorizes the erection of Clinton county out of all those parts of Lycoming and

[Pardee v. Orvis.]

Centre counties, and lying within the following boundaries, namely : "Beginning at Pine Creek, where the north line of Lycoming county crosses said creek," and so on until it comes to the line in controversy in this suit, " thence in a straight line to the north-east corner of Centre county, thence to include Logan, Lamar, and Bald Eagle townships in Centre county, thence along the Lycoming county line to the south-west corner of said county." In this section of the Act, the general outline and boundaries of the county are defined. The second section of the act prescribes how these boundaries were to be ascertained and marked. It provides that William Colt, of Columbia county, Joseph Bressler, of Dauphin county, and John Cresswell, of Huntingdon county, be and are hereby appointed commissioners, whose duty it shall be to ascertain and plainly mark the boundary lines of said county of Clinton. They were also required, after having ascertained and marked the boundary lines, to make out in writing and transmit their report, accompanied with a draft or plot of said county of Clinton, to the governor of the Commonwealth. Whether this part of the duty of said commissioners was performed or not, does not appear in the evidence, as no draft or plot has been shown, and this created the necessity for the passage of the Act of Assembly of 1848, in order that the boundary lines might be determined and fixed upon the ground. This Act of Assembly of 1848, appointed Joseph F. Quay and Dr. Jonathan Moyer, of Clinton county, and Nathan J. Mitchell, of Centre county, commissioners, whose duty it was, or a majority of them, to correctly run and mark distinctly the boundary line, or lines, between the counties of Clinton and Centre, agreeably to the Act of Assembly creating Clinton county. After these commissioners had run and marked the line upon the ground, they were required to make out two drafts, one of which was to be filed in the commissioners' office of Centre county, and the other in the commissioners' office of Clinton county. The commissioners named in this Act of Assembly of 1848, in pursuance of the authority conferred upon them by this act, did run the boundary line known in this case as the line of 1848, and filed in the respective counties a draft of their work, with their report appended and signed by them. One of these drafts and reports taken from the commissioners' office of Centre county has been produced in evidence. It appears from this draft and report, that the commissioners did run and mark a boundary line in 1848, and that with reference to this line a small portion of the Rebecca Kelso Tract lay in Clinton county, about twenty-three acres. As to that portion of the tract, the defendant has filed a disclaimer of title.

In 1857, another Act of Assembly was passed relative to

the boundary lines of Clinton and Centre counties. It would seem that the lines found upon the ground, which were run by the commissioners under the Act of Assembly of 1848, did not correspond with the courses and distances laid down upon their draft. At least, it was alleged that there were discrepancies between the draft filed and the marks found on the ground. Consequently, in 1857, this other Act of Assembly was passed for the purpose of correcting the supposed or real discrepancies between the courses and distances laid down by the commissioners of 1848, upon their draft, and the marks of the boundary line found upon the ground, of that portion of the line running from the waters of Beech Creek to the west branch of the Susquehanna River. Under this last mentioned Act, Nathan J. Mitchell, of Centre county, Joseph F. Quay, and David Carskaddon, of Clinton county, were appointed commissioners, whose duty it was, or a majority of them, to run correctly and mark distinctly the boundary lines between Clinton and Centre counties, from the west branch of the Susquehanna River to the waters of Beech Creek, agreeably to the Act of Assembly creating the county of Clinton. They were also required to make out two drafts, one of which was to be filed in the commissioners' office of each of the said counties. The commissioners were required to perform the duties enjoined upon them by this Act on or before the first day of December, after the passage of said Act of Assembly, which would be the first day of December, 1857. Nothing was done by the commissioners under this act of 1857, and consequently the Act failed of its purpose.

In 1859 another Act of Assembly was passed, wherein Joseph F. Quay of Clinton county, Nathan J. Mitchell and H. P. Treziyulney were appointed commissioners, whose duty it was, or a majority of them, to run correctly and mark distinctly the boundary line or lines between the counties of Centre and Clinton, and to lay down on their drafts the tracts of land through which the lines may pass, agreeably to the Act of Assembly creating said county, and the supplements thereto. They were also required to file a draft of their work in each of the counties of Centre and Clinton and also in the office of the Surveyor General of the state and there to be kept as a matter of record. The Act further provides that the report of said commissioners shall be final and conclusive. In pursuance of this Act of Assembly, those commissioners went upon the ground to run and mark the boundary line between Clinton and Centre counties, and a draft and report of these commissioners taken from the county commissioners' office of this county has been exhibited in evidence, showing the courses and distances

[Pardee *v.* Orvis.]

of this boundary line, as they ran, marked and located it upon the ground.

It is claimed by the plaintiff that the line run and marked by the commissioners appointed under the Act of 1859, is the true boundary line between Centre and Clinton counties, and that that portion of the Rebecca Kelso tract lying east of that line was in Clinton county, and properly subject to be assessed for taxes and sold by the treasurer of Clinton county, for the non-payment of taxes.

It becomes our duty to instruct the jury upon the effect of this Act of Assembly of 1859. It is a question of law for the court to decide, and the jury are to take the instructions of the court as conclusive upon this point, and if we are in error, the party affected by it has his remedy in the supreme court.

[In our view of these various Acts of Assembly, and especially of this Act of 1859, we have no hesitation in saying to the jury, that if the Rebecca Kelso tract of land, is located on the ground, as is shown by the testimony, that a portion of it does lie east of this line of 1859, and that the plaintiff is entitled to recover in this suit that portion of said tract.]

[There seems to be very little dispute about the location of the tract. We are clearly of the opinion, and say to the jury as a matter of law, that the line of 1859 is the true division line between Centre and Clinton counties, and the jury, in determining their verdict, are to adopt it as such. If the Rebecca Kelso tract is located with reference to that line of 1859, as the plaintiff claims, whereby a portion of it is east of the county line of 1859, then the title acquired by James David under the treasurer's sale of 1876, would be a good and valid title, and the plaintiff having acquired that title, would be entitled to recover.]

The defendant presented, inter alia, the following point: 1. The defendant's counsel respectfully ask the court to rule as a matter of law that the object of the Statute of 1859 was to ascertain the true location of the boundary line between the two counties, the marks on the ground being in conflict with the courses and distances indicated in the draft. The Act of 1859 did not contemplate any line of separation different from that designated by the Act of 1839. It did not authorize any territory to be added to or to be taken from either of the original counties not named in the act creating Clinton county. Commissioners had previously located the boundary line: Keller *v.* Young, 78 Pa. St. 166. Refused.

The jury brought in a sealed verdict for the defendants, which, when handed to the court, the court refused to accept, and by direction of the court a verdict was entered of record "for plaintiff by direction of the court." Exception.

[Pardee *v.* Orvis.]

The defendants moved for a new trial, which was refused, the court saying, in an opinion filed :

" The principal reason assigned by the defendant for a new trial is, that the court erred in not entering a verdict for defendant, which had been returned by the jury, and directing a verdict for plaintiff. There was no fact in controversy in this case between plaintiff and defendant. The determination of the case depended upon the construction of the Act of 1859, and the other Acts of Assembly, in regard to the division line between Clinton and Centre counties. All the points submitted by defendant's counsel, except the fourth point, of which there was no evidence to submit to the jury, involved the decision of legal questions. There were really no facts for the jury to pass upon, as the question of location of the Rebecca Kelso tract was not disputed. Nothing was controverted on the trial, but the location of the boundary line between Clinton and Centre counties, which was a question of law for the court. For some reason the jury returned a verdict for defendant, which we declined to receive, and instead of sending them back to reconsider it, we directed a verdict for plaintiff, before the entry of which verdict the defendant excepted. Had we entered the verdict for defendant, we should have been compelled to have set it aside at once. The verdict, in our judgment, is clearly right under our view of the law, and should not be disturbed. Motion for a new trial overruled."

Judgment was entered on the verdict for plaintiff, whereupon the defendants took this writ of error, assigning for error, inter alia, the refusal of their first point, the portions of the charge above quoted within brackets, and the refusal of the court to accept the verdict of the jury for defendants, and the entry by the court of a verdict and judgment for the plaintiff.

*S. R. Peale* (*T. C. Hipple* with him), for the plaintiffs in error.

*H. T. Harvey* (with him *T. T. Abrams*), for the defendant in error.

Chief Justice MERCUR delivered the opinion of the court October 1st 1883.

The main question here is whether the land in controversy lies within the county of Clinton. If it does the judgment is correct. The contention is as to the legal location of the division line between the counties of Clinton and Centre. The defendant in error relies on the location made under the Act of 25th February 1859, Pamp. Laws 83.

By that Act, commissioners were appointed "correctly to run and mark distinctly the boundary line or lines between the

counties of Centre and Clinton ; and it shall be the duty of said commissioners to lay down on their drafts the tracts through which the lines may pass, agreeably to the Act of Assembly creating said counties and the supplements thereto." They were further directed "to make out three drafts, one of which shall be filed in the commissioners' office of each of said counties, and the other to be filed in the Surveyor General's office, and there kept as a matter of record." The Act further declared that "the report of the commissioners shall be final and conclusive." The commissioners ran and marked the boundary line between the two counties, and made and filed the drafts required by the statute. As they ran, marked and located the boundary line on the ground, the land recovered by the defendant in error is undoubtedly within the county of Clinton.

The plaintiff in error denies the power of the commissioners to make the location which they did make. Inasmuch as it was a departure from the location or surveys previously made he claims it was not authorized by the Act appointing them. He attempts to maintain this view by an extract from the opinion in Keller *v.* Young, 28 P. F. Smith 166, where the purpose of this commission was considered. We still adhere to that view of the statute; but it does not support the contention of the plaintiff in error here. We were not there discussing the power of the commissioners to correctly run and mark the boundary line on the ground, thus locating it; but we were considering their absence of power to change the location of any tract of land. We said they could not change the line of any tract, nor move its corners; that they could neither relocate any tract of land, nor decide on which side of the county line any tract might lie. We distinctly declared the power was given to them to locate the boundary line and establish the evidence thereof on the ground and in their report. This clearly negatives the construction sought to be put on that case.

Doubt and uncertainty as to the correctness of all previous locations and surveys, led to the appointment of this commission. Their duty was not to ascertain where the boundary line had previously been run and marked; but to determine where it should rightly have been run and marked; and their work and the report thereof was to "be final and conclusive." The correctness of that location cannot now be questioned in this case.

Had there been any disputed fact in evidence it would have been error to take the case from the jury, but we discover none such. The first point submitted by the plaintiff in error is correct as an abstract proposition and might have been affirmed without benefiting him. Much therein was wholly irrelevant in the case, and the refusal to affirm the point is not cause for reversal.

Under the whole evidence it would have been the duty of the court to set aside a verdict in favor of the defendant below. It would have been more regular to have given the jury binding instructions before sending them out, yet it was not substantial error if he did so instruct them when he discovered they were about to render a verdict contrary to the law of the case: Whiting *v.* Lake, 10 Norris 349. None of the specifications of error is sustained.

Judgment affirmed.