**Gillen v. Trovato**

*Thomas M. Holland,* for plaintiff.
*Bethann Naples,* for defendants.

LACHMAN, *J.,* June 17, 2010—Plaintiff Frank Gillen was employed by the Delaware River Port Authority (DRPA) as an assistant cruise terminal coordinator. He worked at the Philadelphia Cruise Terminal as an assis-

tant to the port operations. Port operations involve a variety of tasks including operating the port and the maintenance and repair of the infrastructure of the port.

Defendant Carl Trovato had 16 years experience working for another port operator. In that job he supervised Rudy Stumpo, who later became the operations manager of DRPA. Stumpo hired Trovato part-time and his contract specifically identified Trovato as an independent contractor and not an employee of DRPA. Trovato, however, contended at trial that he was an employee of DRPA.

On July 18, 2005, Royal Caribbean's cruise ship *The Enchantress* was going to dock at the Philadelphia Cruise Terminal. Advanced preparations were needed because *The Enchantress* was the largest ship to use the cruise terminal. Cuts were required in the pier to accommodate the placement of new gangways that were to be used in loading/off-loading large baggage bins. The gangways were to be attached to the pier and were to lead directly into the baggage compartment of the ship.

DRPA constructed two 20-foot gangways by cutting one 40-foot gangway in half. They were delivered to the area of the pier but had to be moved into position next to the ship. Instead of summoning stevedores or other workers, defendant Trovato himself operated a forklift and moved one of the gangways. The gangway was lashed to the forklift but not very securely, as it could teeter and seesaw. Trovato instructed plaintiff to hold on to one side of the gangway. Trovato then drove the forklift and gangway towards the ship as the plaintiff was walking backwards.

The parties' versions of events diverge widely at this point. Plaintiff testified that the end of the gangway that

he was not holding suddenly dropped down. His end rose and lifted him off of the ground. Plaintiff then fell to the ground sustaining injuries to his collarbone and left shoulder.

In stark contrast to the plaintiff's version, defendant Trovato testified that he successfully and without incident moved both gangways to the pier with the plaintiff's help. The two men then installed both gangways on the ship. Mr. Trovato identified a photograph showing the installed gangways with plaintiff in the background. Later in the day, however, one of the gangways had to be removed for further modifications. Trovato testified that as the plaintiff and Trovato detached the gangway from the ship, the ship-side of the gangway fell into the river causing the pier-side of the gangway (which plaintiff and Trovato were holding) to suddenly rise up. Trovato let go and landed on the ground without injury. Plaintiff held on to the gangway and went up with it and then hit the ground when the gangway came down.

Plaintiff sued Trovato; Cushman & Wakefield Inc.; Greenwich Terminals LLC; Philadelphia Industrial Development Corp.; the City of Philadelphia; and WACO Products Inc. All of the defendants except Trovato were dismissed from the case before trial.

The jury answered only two of the seven questions on the verdict slip:

"(1) Do you find that the defendant, Carl Trovato, was negligent? Yes( )     No(X)

"If your answer is 'Yes', proceed to question 2.

"If your answer is 'No', return to the courtroom, plaintiff cannot recover.

"(7) Do you find that the defendant, Carl Trovato, was an independent contractor or an employee of the Delaware River Port Authority?

"Independent Contractor     ( )

"Employee                   (X)"

The jury clearly believed Trovato's version of the events and did not believe the plaintiff's version.

Plaintiff filed a timely amended post-trial motion on September 28, 2009.[1] The court heard argument on December 10, 2009, and denied the amended post-trial motion on December 11, 2009.

Plaintiff filed a timely notice of appeal. The court entered an order for a statement of the errors complained of on appeal on February 1, 2010. Plaintiff timely filed Pa.R.A.P. 1925(b) statement raised the following issues:

"(1) This honorable court erred by excluding a standard jury charge on OSHA violations when:

"(a) The evidence supported a conclusion by the jury that the defendant violated OSHA standards; and

"(b) The public policy of the Commonwealth of Pennsylvania and the State of New Jersey requires a hi-state employer such as the Delaware River Port Authority to apply minimum industry standards for safety and training to prevent foreseeable injuries to workers.

---

1. Plaintiff electronically filed his original post-trial motion at 14:05 on September 28, 2009. At 15:26 he electronically filed his amended post-trial motion. The only difference was that the amended motion contained a proof of service that was missing from the original filing. The court entered an order on December 11, 2009, dismissing the original post-trial motion as moot because plaintiff had filed an amended post-trial motion.

"(2) When the evidence was sufficient to establish that the defendant was negligent and that he was an independent contractor, is plaintiff entitled to a new trial because this honorable court erred by:

"(a) Failing to adjudicate plaintiff's motion in limine regarding workers' compensation immunity;

"(b) Failing or refusing to charge the jury on violation of OSHA regulations;

"(c) Failing or refusing to charge the jury on evidence of general negligence when the evidence showed that the defendant failed to comply with safety requirements;

"(d) Failing or refusing to charge the jury on workers' compensation immunity even after the jury requested clarification on the legal consequences of determining the defendant's employment status;

"(e) Failing to shift the burden of proving the affirmative defense of the defendant's employment status to the defendant; and

"(f) Failing or refusing to direct a verdict on the issue of defendant's employment status?"

None of these issues has merit. This honorable court should affirm the jury's verdict in favor of the defendant.

## A. THE COURT DID NOT ERR BY FAILING TO CHARGE THE JURY ON THE VIOLATION OF OSHA STANDARDS

The trial court did not err in failing to charge the jury in accordance with Pa.S.S.J.I. (Civil) §3.08, which states that a violation of OSHA standards is negligence per se or evidence of negligence. The federal Occupational

Safety and Health Act of 1970 (OSH Act),[2] does not apply to state employers such as DRPA and there was no evidence that defendant Trovato "employed" the plaintiff. Public policy did not require charging the jury regarding violations of OSHA standards. Plaintiff also did not prove that New Jersey and Pennsylvania workplace safety regulations were "complementary or parallel."

### 1. OSHA Standards Do Not Apply to DRPA

Plaintiff admits that "DRPA is a public corporate instrumentality of both the Commonwealth of Pennsylvania and the State of New Jersey created by a compact between the two states. See 36 P.S. §3503; N.J.S.A. §32:3-2 et seq. (identical statutes setting forth the charter of the DRPA). It was created with the approval of Congress pursuant to the Compact Clause of the United States Constitution, U.S. Constitution Article I, section 10, cl. 3." Plaintiff's supplemental post-trial memorandum of law p. 8.

The OSH Act applies only to "employers." The Act exempts states and their political subdivisions from the statutory definition of an "employer." See 29 U.S.C. §652(5).[3,4] Consequently, public employees are not pro-

---

2. Act of Dec. 29, 1970, 91-596, 84 Stat. 1590, 29 U.S.C. §651 et seq. (OSH Act). "OSHA" refers to the Occupational Safety and Health Administration and the regulations and standards promulgated by that body.

3. A test to determine whether an entity is a political subdivision of a state and, therefore, not covered by the OSH Act, is set forth in 29 C.F.R. §1975.5(b). During the trial and in his amended post-trial motions and brief, the plaintiff never mentioned or invoked the provisions of 29 C.F.R. §1975.5(b). Consequently, plaintiff has waived any issue or argument concerning. 29 C.F.R. §1975.5(b). See *Coffey v. Minwax Co. Inc.,* 764 A.2d 616, 622 (Pa. Super. 2000) ("It is well-settled that

tected by the Act. *Id.* Instead, the OSH Act encourages the states to enact their own legislation to protect public employees. 29 U.S.C. §651(b)(11).[5] Because the OSH Act did not apply to DRPA, the trial court did not err in failing to charge the jury on Pa.S.S.J I. (Civil) §3.08.

---

a party may not raise an argument for the first time on appeal. See Pa.R.A.P. 302. Since appellants failed to raise the precise argument raised on appeal before the trial court, we find the issue to be waived."); *McCloud v. McLaughlin,* 837 A.2d 541, 543-44 ("The appellate court's job is to correct errors of law. If counsel never raised a point during trial, it cannot be said that the trial judge made an 'error of law' needing to be corrected, even if some legal theory would have demanded that the trial judge erred.").

4. *"Section 652. Definitions*

"For the purposes of this Act—

"(4) The term *'person'* means one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons.

"(5) The term *'employer'* means a person engaged in a business affecting commerce who has employees, but *does not include* the United States (not including the United States Postal Service) or *any state or political subdivision of a state.*

"(6) The term *'employee'* means an employee of an employer who is employed in a business of his employer which affects commerce.

"(7) The term *'state'* includes a state of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, and the Trust Territory of the Pacific Islands." 29 U.S.C. §652. (emphasis added)

5. *"Section 651. Congressional statement of findings and declaration of purpose and policy*

"(b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several states and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—

"(11) by encouraging the states to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws by providing grants to the states to assist in identifying

## 2. *Public Policy Did Not Require Charging the Jury Regarding Violations of OSHA Standards*

Equally unavailing is the plaintiff's second argument—that the "public policy" of Pennsylvania and New Jersey required the trial court to charge the jury on violations of OSHA standards. Neither Pennsylvania nor New Jersey has enacted legislation that expressly imposes the OSH Act or its standards upon DRPA. Plaintiff did not prove that both states had enacted identical or even similar legislation to protect public employees from the dangers involved in the present case. Plaintiff agreed that neither state may "unilaterally impose additional duties, powers, or responsibilities upon the Authority." *Eastern Paralyzed Veterans v. Camden,* 111 N.J. 389, 545 A.2d 127, 128 (1988), quoting *Nardi v. Delaware River Port Authority,* 88 Pa. Commw. 558, 560, 490 A.2d 949, 950 (1985). See plaintiff's supplemental post-trial memorandum of law p. 8.

Plaintiff argued that express adoption of the OSH Act and its standards was not necessary so long as both states have similar parallel or complementary workplace safety statutes. Plaintiff's argument is based on *Fraternal Order of Police, Penn-Jersey Lodge 30 v. DRPA,* 323 N.J. Super. 444, 733 A.2d 545, 551 (App. Div. 1999), *certif. denied,* 162 N.J. 663, 745 A.2d 1213 (1999), *cert. denied,* 530 U.S. 1275 (2000); and *Delaware River Port*

---

their needs and responsibilities in the area of occupational safety and health, to develop plans in accordance with the provisions of this Act, to improve the administration and enforcement of state occupational safety and health laws, and to conduct experimental and demonstration projects in connection therewith; . . . ." 29 U.S.C. §651.

*Authority v. FOP,* 290 F.3d 567 (3d Cir. 2002). The New Jersey Supreme Court explained these decisions in *Ballinger v. DRPA,* 172 N.J. 586, 800 A.2d 97 (2002), as follows:

" '[B]istate entities created by compact . . . are not subject to the unilateral control of any one of the states.' " *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30, 42, 115 S.Ct. 394, 402, 130 L.Ed.2d 245 (1994). "[A] single state cannot dictate the policy of a bi-state agency." *Eastern Paralyzed Veterans Association, supra,* 111 N.J. at 407, 545 A.2d 127; accord *Bell v. Bell,* 83 N.J. 417, 424, 416 A.2d 829 (1980) (finding that all signatory states must 'enact laws involving and regulating the bi-state agency') quoting *Del. River & Bay Auth. v. NJ Pub. Employment Relations Comm'n,* 112 N.J. Super. 160, 165-66, 270 A.2d 704 (App.Div. 1970), *aff'd o.b.,* 58 N.J. 388, 277 A.2d 880 (1971). Therefore, all parties agree that 'the unilateral imposition of additional duties . . . on the authority . . . is impermissible absent express authorization in the compact or joint legislation by the two creator states.' *Delaware River Port Authority v. Commonwealth, State Ethics Commission,* 137 Pa. Commw. 170, 585 A.2d 587, 589 (1991). Neither of those exceptions applies in this case.

*"Courts applying Pennsylvania law do not necessarily agree with this court's holding that '[t]he corollary of the proposition that neither state may individually impose its will on the bi-state agency is that the agency may be made subject to complementary or parallel state legislation.' Eastern Paralyzed Veterans, supra,* 111 N.J. at 400, 545 A.2d 127; accord *Bunk v. Port Auth. of N.Y. & N.J.,* 144 176, 184, 676 A.2d 118 (1996). Under the

'complementary or parallel legislation' principle, one compact state's statute can be applied to the bi-state agency if it is 'substantially similar' to an enactment of the other state. *Eastern Paralyzed Veterans, supra,* 111 N.J. at 401, 545 A.2d 127. That principle applies even where the statutes at issue do not expressly refer to the bi-state agency. *Fraternal Order of Police, Penn-Jersey Lodge 30 v. Del. River Port Auth.,* 323 N.J. Super. 444, 453-54, 733 A.2d 545 (App.Div.), *certif denied,* 162 N.J. 663, 745 A.2d 1213 (1999), *cert. denied,* 530 U.S. 1275, 120 S.Ct. 2743, 147 L.Ed.2d 1007 (2000) (*Lodge 30*). Although DRPA contends otherwise, state courts in both New Jersey and Pennsylvania have recognized that complementary state legislation may be applied to DRPA and other bi-state agencies. See *e.g., Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth.,* 147 N.J. 433, 447, 688 A.2d 569 (finding substantially similar laws concerning collective bargaining negotiations in New Jersey and Delaware to be effective modification of compact requiring defendant DRPA to negotiate collectively with employees), *cert. denied,* 522 U.S. 861, 118 S.Ct. 165, 139 L.Ed.2d 108 (1997) (*Local 68*); *Delaware River Port Authority v. Commonwealth, State Ethics Comm'n, supra,* 585 A.2d at 588 (finding New Jersey and Pennsylvania did not have substantially similar ethics laws); *Nardi v. Delaware River Port Authority,* 88 Pa. Commw. 558, 564 n.10, 490 A.2d 949, 952 n.10 (1985) (finding New Jersey and Pennsylvania did not have substantially similar disability compensation laws but noting that 'identical legislation would [not] be required to give effect to the intent of the legislatures if it were clear that such intent was to confer a benefit on [DRPA] employees').

"Notwithstanding those state court decisions, the United States District Court for the Eastern District of Pennsylvania recently rejected the theory that one state's legislation need only be 'complementary or parallel' to, or evidence substantially similar public policies as, the other state's law in order for it to apply to DRPA, *Del. River Port Auth. v. Fraternal Order of Police,* 135 F. Supp.2d 596, 602 (E.D. Pa. 2001). Instead, that court adopted an 'express intent' standard as controlling the interpretation of the compact. According to that court, the express intent standard would require: '(1) that New Jersey and Pennsylvania have enacted legislation that expressly imposes a duty upon the DRPA; and (2) that the legislation enacted by each state imposing the duty on DRPA [be] substantially similar.' *Id.* at 609. DRPA urges us to apply that standard. But after oral argument in this case, the United States Court of Appeals for the Third Circuit reversed the District Court. *Del. River Port Auth. v. Fraternal Order of Police,* 290 F.3d 567 (3d Cir. 2002). The Third Circuit found that DRPA had a duty to bargain collectively because, as previously decided by a New Jersey state court, 'the New Jersey statutes and the Pennsylvania statutes are complementary and parallel.' *Id.* at 578 (quoting *Lodge 30, supra,* 323 N.J. Super. at 459, 733 A.2d 545). The Third Circuit reasoned that when the parties agreed to litigate an issue of federal law in a state court, the appeals court would not reconsider the state court judgment in a subsequent action. *Id.* at 577. We, therefore, apply the Third Circuit's holding and reaffirm our prior conclusion that the 'complementary or parallel' legislation test is to be applied in determining whether the subsequent laws of one compacting state will apply to a bi-state agency." *Ballinger v. DRPA,* 172 N.J. at 593-96, 800 A.2d at 101-102. (emphasis added)

The Third Circuit, however, has not adopted the "complementary or parallel legislation test" and has stated that the New Jersey Supreme Court in *Ballinger* misread its decision in *DRPA v. FOP.* In *International Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Commission,* 311 F.3d 273, 279 n.5 (3d Cir. 2002), the Court of Appeals stated:

"Recently, the New Jersey Supreme Court characterized our ruling in *Lodge 30* as having endorsed New Jersey's view that express statements are not required to modify hi-state compacts. *Ballinger v. Del. River Port Auth.,* 172 N.J. 586, 800 A.2d 97, 102 (2002). We do not read our ruling as having reached the merits issue."

Furthermore, the Third Circuit's *DRPA v. FOP* decision was expressly limited to the area of collective bargaining. See 290 F.3d at 575. In *DRPA v. FOP* the court clearly stated:

"We express no opinion on other issues related to bi-state compacts that fall outside the specific context of labor negotiations with DRPA and PATCO law enforcement employees." 290 F.3d at 578.

Even if the Third Circuit had adopted the "complementary or parallel legislation test," neither the trial court nor the Superior Court would be bound by that decision. Decisions of the United States Courts of Appeals are not binding on Pennsylvania courts, even where they concern federal questions. *E.g., Commonwealth v. Moore,* 928 A.2d 1092, 1099 n.3 (Pa. Super. 2007). See *Montagazzi v. Crisci,* 2010 Pa. Super. 78, ¶14 n.7, 994 A.2d. 626 (April 30, 2010) ("we recognize and reiterate that the holdings of federal circuit courts bind neither this court nor the trial court").

Plaintiff did not present any Pennsylvania state case expressly adopting the "complementary or parallel legislation test."

The foregoing persuaded the trial court that the "complementary or parallel legislation test" is not the law of this Commonwealth and did not apply to the present case.

### 3. Plaintiff Failed the "Complementary or Parallel Legislation" Test

Even if the "complementary or parallel legislation test" were the law of this Commonwealth, a jury instruction on violation of OSHA standards still would not have been appropriate because plaintiff did not prove that Pennsylvania and New Jersey workplace safety laws are, in fact, complementary or parallel.

The New Jersey Public Employees' Occupational Safety and Health Act, N.J.S.A. §34:6A-25 et seq., specifically orders the adoption of the occupational health and safety standards set forth in the federal OSH Act and its regulations. N.J.SA. §34:6A-30(a). The regulations promulgated by the N.J. Commissioner of Labor also expressly adopt OSHA's standards and regulations. See N.J. Admin. Code §12.100-3A 1, §12.100-3A3, §12.100-4.2, §12.100-5.2.

Pennsylvania, however, does not have a similar legislative or regulatory scheme. Plaintiff invokes two provisions of our General Safety Law:

"*Section 25-2. General safety and health requirements*

"(a) All establishments shall be so constructed, equipped, arranged, operated, and conducted as to pro-

vide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein.

"(b) All belts, pulleys, gears, chains, sprockets, shafting, and other mechanical power transmission apparatus, stationary engines, electrical equipment, and apparatus shall be properly guarded to protect workers from injury.

"(c) All cranes, hoists, steam or electric shovels, plant railroads, and other apparatus or devices used for moving, lifting, lowering, and transporting material shall be designed, constructed, equipped, and operated as to eliminate dangerous conditions.

"*Section 25-1. Definitions*

"The term 'establishment' shall mean any room, building or place within this Commonwealth where persons are employed or permitted to work for compensation of any kind to whomever payable, except farms or private dwellings, and shall include those owned or under the control of the Commonwealth, and any political subdivision thereof, as well as school districts." 43 P.S. §25-2 and §25-1.

Plaintiff argues that the following two provisions of the New Jersey Public Employees' Occupational Safety and Health Act are complementary and parallel to the sections of the Pennsylvania General Safety Law set forth above:

"*Section 34:6A-33. Responsibilities of employers*

"Every employer shall:

"(a) Provide each of his employees with employment and a place of employment which are free from recog-

nized hazards which may cause serious injury, physical harm or death to his employees; and

"(b) Comply with occupational safety and health standards promulgated under this act.

"*Section 34:6A-34. Duty of compliance by public employees*

"Every public employee shall comply with occupational safety and health standards and all regulations promulgated under this act which are applicable to his own actions and conduct." N.J.S.A. §34:6A-33 and §34:6A-34.

Plaintiff never explained why these statutes are complementary and parallel, and, instead, baldly asserted that they simply are complementary and parallel legislation. See plaintiff's supplemental post-trial memorandum of law, pp. 9-10.[6] Even if the complementary and parallel legislation test applied, these statutes do not meet that test. The New Jersey statutes are too general and apply to employer and employee conduct, while the Pennsylvania statute applies to "establishments" and does not apply to employee conduct. Moreover, N.J.S.A. §34:6A-

---

6. Plaintiff's failure to develop a proper argument in support of this issue resulted in the waiver of that issue. The court will not become the plaintiff's lawyer and develop those issues for him. See *e.g., Stumpf v. Nye,* 950 A.2d 1032, 1038 (Pa. Super. 2008) ("Noticeably absent from Mr. Stumpf's brief or reply brief is the development of any argument or citation to authority supporting the conclusion that these specific instances of conduct were admissible on cross-examination pursuant to Pa.R.E. 405(a) or related to an element of the claim or defense, as directed by Pa.R.E. 405(b)(1). We decline to become counsel for Mr. Stumpf and develop this issue for him on appeal.").

33b incorporates the very specific standards promulgated by OSHA, which New Jersey has adopted. See N.J.S.A. §34:6A-30(a), and N.J. Admin. Code §12.100-3AJ, §12.100-3A.3, §12.100-4.2, §12.100-5.2. Pennsylvania, on the other hand, had declined to adopt the standards and regulations promulgated by OSHA. Consequently, the New Jersey and Pennsylvania statutory provisions identified by the plaintiff are not "complementary or parallel legislation."

### 4. Plaintiff's Remaining Issues Did Not Require Submitting the Issue of OSHA Violations to the Jury

Penultimately the plaintiff argues that because plaintiff was a member of the class sought to be protected by the OSH Act (workers), he was entitled to the standard OSHA instruction, or at least an instruction that the violation of the OSH Act was "some evidence of negligence." This issue is without merit. The OSH Act applies only to "employers," and there was no evidence that Trovato was the employer of plaintiff. On the contrary, the jury expressly found that Trovato and plaintiff were both employees of DRPA.

Lastly, in his supplemental post-trial memorandum of law (p. 11), plaintiff raises for the first time the issue that the court erred in charging the jury that OSHA safety standards do not apply to this case.[7] This issue is waived because it was not mentioned in plaintiff's amended

---

7. The court's instruction on this issue was as follows:

"Members of the jury, you have heard testimony and remarks about OSHA regulations. OSHA regulations were enacted to ensure that employers provide safe environments for their employees.

post-trial motion. The amended post-trial motion alleges error only in not charging on OSHA violations; it does not allege an error in the actual instruction given by the court.[8] An issue not specifically set forth in the post-trial motion is waived even though the party argues the issue in his brief supporting the post-trial motion. *Siculietano v. K & B Amusements Corp.,* 915 A.2d 130, 132 n.2 (Pa. Super. 2006); *Tucker v. Community Medical Center,* 833 A.2d 217, 226 (Pa. Super. 2003).

### B. THE ISSUES CONCERNING WORKERS' COMPENSATION IMMUNITY ARE WITHOUT MERIT

Plaintiff argues that the court erred in "failing to adjudicate plaintiff's motion in limine regarding workers' compensation immunity," and in refusing to instruct the jury on workers' compensation immunity. See plaintiff's amended post-trial motion ¶¶11, 17, 24. Neither issue has merit.

---

"You have heard that included in the OSHA safety standards is the requirement that an employee who operates a forklift be certified to do so.

"In the instant matter, OSHA regulations do not apply for several reasons, and you cannot use a violation of an OSHA regulation to establish negligence in this case." N.T. 9/17/09, pp. 171-72.

8. Paragraph 5 of plaintiffs amended post-trial motion merely states:

"During the course of the court's adjudication on the defendant's belated attempt to exclude OSHA standards plaintiff argued for the consideration of the standard jury charge 3.08 'Evidence of negligence—violation of OSHA regulation or ANSI standard.' The court erroneously rejected this request."

## 1. *The Motion in Limine*

Plaintiff filed a motion in limine seeking to bar Trovato from presenting any testimony or argument that he was plaintiff's co-employee and was entitled to immunity from suit under the Workers' Compensation Act. Control no. 0909073682. After hearing argument on the motion before the start of trial testimony, the court deferred ruling upon the motion until the issue arose during the trial. N.T. 9/14/09, pp. 10-12.

Plaintiff's motion was argued *after* Trovato's motion in limine which sought a pretrial determination that Trovato *was* an employee of DRPA. Control no. 0909071687. N.T. 9/14/09, pp. 5-9. On September 14, 2009, the court entered an order denying Trovato's motion. The order states in pertinent part: "The issue of whether defendant Trovato was an employee or an independent contractor is one of fact to be determined by the finder of fact." The court then went on to defer the plaintiff's motion for the same reason.

Plaintiff's assertion that the court erred in not "adjudicating" his motion in limine is nonsense. A party does not have the right to a pretrial ruling upon legal issues from the trial judge. A motion in limine does not compel a judge to rule upon an issue that depends upon facts that need to be developed at trial. There was no error in deferring ruling upon the plaintiff's workers' compensation motion until it arose at trial.

## 2. *The Court Did Charge on Workers' Compensation Immunity*

Any error in charging on workers' compensation was mere harmless error because the jury determined that

Trovato was not negligent. Consequently, any immunity he may have had as plaintiff's co-worker was irrelevant to that determination.

It was not error to refuse the plaintiff's requested charge on workers' compensation immunity. Plaintiff's requested jury instruction no. 12 consisted of the entire text of 77 P.S. §481 and 77 P.S. §41.[9] Remarkably, the

---

9. Plaintiff's requested jury instruction no. 12 states in full:

"Employers, co-employees, and injured workers are immune from liability for negligence in the workplace under the Workers' Compensation Act. Employer immunity falls under the exclusivity provision of the Workers' Compensation Act, pursuant to 77 P.S. §481, which states:

"(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

"(b) In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but *the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise,* unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action. [emphasis by the plaintiff]

"Immunity for a co-employee and employee negligence is contained in section 201 of the Workers' Compensation Act, 77 P.S. §41, which states:

"In any action brought to recover damages for personal injury to an employe in the course of his employment, or for death resulting from such injury, it shall not be a defense—

requested instruction also asked the court to charge the jury that "defendant Trovato is *estopped* from blaming DREA or its employees for the cause of plaintiff's injury." (emphasis added)

At the charging conference, plaintiff argued that this instruction was necessary to combat the "empty chair," *i.e.,* the fact that DRPA and its employees were not defendants in the case. N.T. 9/17/09, pp. 30-33. The proposed instruction clearly went way too far and deprived Trovato of the legitimate defense that DRPA employees Randy Stumpo, Ray Ferigione, or some other DRPA employee was at fault in causing plaintiff's injury.

More important, however, is the fact that the instruction proposed by the plaintiff sets forth an incorrect statement of the law. The provisions of 77 P.S. §41 do *not* apply in third-party tort actions such as the present case. *Cool v. Curtis-Wright Inc.,* 362 Pa. 60, 66, 66 A.2d 287, 290 (1949).

---

"(a) That the injury was caused in whole or in part by the negligence of a fellow employe; or

"(b) That the employe had assumed the risk of the injury; or

"(c) That the injury was caused in any degree by the negligence of such employe, unless it be established that the injury was caused by such employe's intoxication or by his reckless indifference to danger. The burden of proving such intoxication or reckless indifference to danger shall be upon the defendant, and the question shall be one of fact to be determined by the jury.

"In this case it is undisputed that Randy Stumpo and Ray Ferigione were plaintiff's co-workers and that DRPA was their employer.

"Defendant Trovato is estopped from blaming DRPA or its employees for the cause of plaintiff's injury. Defendant Trovato is not excused for any conduct causing or contributing to plaintiff's injury unless you have determined he was an employee of DRPA at the time of the injury."

The next morning the jury began deliberating and returned at 11 a.m. with two questions:

"Please tell us the definition 'employee' versus 'independent contractor' that was stated yesterday. Can we review on document or transcript?

"What are implications of the decision of whether Trovato was an employee or independent contractor? What is legal context? Are we deciding between these two options?" (Court exhibit 1.)

In the side-bar discussions about these questions, counsel for plaintiff again requested that the court give the jury his proposed jury instruction no. 12. N.T. 9/18/09, pp. 8-13. This time he agreed to the deletion of the estoppel sentence. *Id.* pp. 21-23. The court again decided not to give the instruction but agreed to convey the information about immunity to the jury in the recharge. The court then charged the jury as follows:

"The Court: . . . Your second set of questions, which we've marked as C-1 asks: 'Please tell us the definition "employee" versus "independent contractor" that you stated yesterday. Can we review' I think it says 'on document or transcript?'

"I don't have a written document that I can hand you to repeat what the charge was. And we don't have a transcript to leave with you. But I will be happy to give you the instruction again.

"And I am seeing lots of nodding heads, which I assume what you want is the charge again; is that correct?

"The Jury: Yes.

"The Court: Okay. Everybody seems to have acknowledged that that is correct.

"The issue that I asked you to consider was whether or not Mr. Trovato, what his employment status was on July 18, 2005.

"The agreement between the defendant, Mr. Trovato, and the DRPA, is a contract. The proper construction of a contract is not dependent upon any name given by the parties or upon any one provision, but upon the entire body of the contract, and its legal effect as a whole. The basic goal of contractual interpretation is to ascertain the intent of parties at the time they entered an agreement and to give effect to the agreement's term.

"The contract between Mr. Trovato and the DRPA is not only the best but the only evidence of what the agreement between the defendant and the DRPA was. All preliminary negotiations, conversations, and verbal agreements are merged and superseded by the written contract that came later.

"In determining whether a person is an employee or an independent contractor, you must consider various factors, including:

"Control of the manner of work to be done;

"Responsibility or whether the responsibility is for results only;

"Terms of any agreements between the parties;

"The nature of the work or occupation;

"The skill required for the performance of the job;

"Whether the person is engaged in a distinct operation or business;

"Which party supplies the tools;

"Whether payment is by time or by the job;

"Whether the work is part of the regular business of the employer;

"And the right to terminate employment at any time;

"Those are considerations that you should take into consideration as you decide.

"No one factor determines an individual status. You can assign whatever evidentiary weight to the evidence as you choose when you determine whether Mr. Trovato was an independent contractor or an employee.

"If you find that Mr. Trovato was hired to perform a particular job and that the DRPA had no control over the way the work was to be accomplished, then you must find that he was an independent contractor. However, if you find from the evidence that the evidence [sic] directed and controlled Mr. Trovato as to the manner or evidence [sic] of performing his work, then you must find that he was an employee of the DRPA at the time of the plaintiffs' accident.

"The designation given an individual in a contract is not conclusive as to whether that person is an employee or an independent contractor. You are to consider the entirety of the facts presented in making your decision.

"And that gets me to your last question, which was: 'What are the implications of the decision of whether Trovato was an employee or an independent contractor? at legal context are we deciding between these two options.'

"*If you find that Mr. Trovato is an employee, then he would be a co-employee of the plaintiff, and he would*

*be immune from suit; which means, a verdict could not be entered against him.*

"Do those answer the questions that the jury has—first who is the jury foreperson?

"Juror no. 1: I am, right here.

"The Court: Ms. Duffy?

"Juror no. 1: Yes.

"The Court: Does that answer the question you have submitted to the court?

"Juror no. 1: Yes." N.T. 9/18/09, pp. 28-32. (emphasis added)

The plaintiff waived any objections to this recharge because he did not object to the recharge after it was given. "[I]n order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of proceedings; the failure to do so will result in a waiver of the issue." *Kaufman v. Campos,* 827 A.2d 1209, 1212 (Pa. Super. 2003). Consequently, a party waives appellate review of an objection to a jury instruction by failing to timely object to it. *Takes v. Metropolitan Edison Company,* 548 Pa. 92, 695 A.2d 397 (1997); *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 260, 322 A.2d 114, 117 (1974). The waiver rule applies with equal force when a party fails to timely object to the answer given by the court in response to a question from the jury. *Kaufman,* 827 A.2d at 1212 (counsel's failure to object to court's response to a question from the jury waived the issue on appeal); *Thompson v. Motch & Merryweather Machinery Company,* 358 Pa. Super. 149, 155-

56, 516 A.2d 1226, 1229-30 (1986) (finding issue waived on appeal; after an initial objection to the jury instructions, the court accepted plaintiffs' suggested addition and instructed the jury further; no objection was made to the court's corrected instructions, and none was taken to the reiteration of those instructions in response to the jury's request for additional instructions). Cf., *DiSerafino v. Bucyrus-Erie Corporation*, 323 Pa. Super. 247, 252-53, 470 A.2d 574, 577 (1983) (objections to instructions given by the court when it recharged the jury are waived where counsel fails to take a specific exception to the recharge).

Plaintiff's supplemental post-trial memorandum of law (p. 16) asserted that "the omission of the alternative, that Mr. Trovato was an independent contractor, rises to the level of a fundamental error that rendered the jury charge as a whole fatally flawed." It is significant to note that the charge on immunity given by the court is almost exactly the charge contained in the last sentence of plaintiff's instruction no. 12: "defendant Trovato is not excused for any conduct causing or contributing to plaintiff's injury unless you have determined he was an employee of DRPA at the time of the injury." The charge requested by plaintiff did not include "the alternative, that Mr. Trovato was an independent contractor"; consequently, plaintiff cannot complain that the jury was not charged on the alternative.

Five minutes after returning to deliberate, the jury sent a note stating that they had reached a verdict. The jury found Trovato was not negligent and that he was an employee of DRPA. Plaintiff argues that this proves

prejudice from the court's rulings. To the contrary, it merely shows that at least one juror was confused about the distinction between an employee and an independent contractor and, once the juror heard the definitions again, the confusion vanished.

In sum, the trial court's recharge on workers' compensation was not erroneous and the trial court did not err or abuse its discretion in failing to charge the jury on plaintiff's instruction no. 12.

## C. THE COURT PROPERLY PLACED THE BURDEN OF PROVING EMPLOYMENT STATUS

Plaintiff's amended post-trial motion and 1925(b) statement argue that the trial court erred by failing to shift the burden of proving the affirmative defense of the defendant's employment status to defendant Trovato. Plaintiff's support for this argument, however, totally misstates the record.

The plaintiff correctly states that on September 17, at approximately 4:30 p.m., at the end of the court's original charge, the court instructed the jury that it was the plaintiff's burden to prove whether Trovato was an independent contractor. Plaintiff ignores the fact that the court realized the mistake and corrected it immediately, albeit not in the clearest of terms:

"The Court: . . Also, when I spoke to you about the question of whether Mr. Trovato was an employee or an independent contractor of the Delaware River Port Authority, *the burden to prove that he was an independent contractor is on the plaintiff; to prove that he was an employee is on the defendant.*

"And insofar as that question is on the questionnaire, the jury questionnaire, you are to answer that question regardless of your answers to the previous questions.

"You're shaking your head, Mr, Holland.

"Mr. Holland [plaintiff's attorney]: Yes. That wasn't the understanding. It was an affirmative defense, your honor. It is pled as an affirmative defense. Plaintiff has no burden of proof on that issue. It is an affirmative defense for the—

"The Court: *I take that back. It was an affirmative defense of the defense to prove—I stand corrected—that Mr. Trovato was an employee of the DRPA. So they had the burden of proving on that issue.*

"And it is the same burden of proof that I've discussed with you previously. Everything is by that same fair preponderance of the evidence standard.

"Given the hour, I am not going to have you deliberate this evening, unless you have some overwhelming [sic] to stay late." N.T. 9/17/09, pp. 209-10. (emphasis added)

Plaintiff also ignores that the first thing the court did the next morning (September 18, 2009) was to clarify this instruction and recharge the jury on that point. The court's recharge clearly told the jury that Trovato had the burden of proving he was a DRPA employee:

"The Court: Good morning, ladies and gentlemen.

"I wanted to clarify something that came up in my charge towards the end of yesterday. And that is the issue of whether or not Mr. Trovato was an independent contractor or an employee of the Delaware River Port Au-

thority, which came up in the charge. And I may have been less than clear in the instruction I gave you. So let me clarify.

"The plaintiff, Mr. Gillen, takes the position that Mr. Trovato was an independent contractor. Mr. Trovato takes the position that he was an employee. *It is Mr. Trovato's burden of proof to establish that he was an employee. The plaintiff does not have a burden of proof on that issue.* And as any burden of proof in this case, it must be proven by a fair preponderance of the evidence by the tipping of the scale. Okay? So that is defendant's burden.

"You are, as I said to you yesterday, to answer question no. 7 regardless of your answers to questions 1 through 6. Okay?

"Anything else, counselors?

"Ms. Naples [defendant's attorney]: No, your honor.

"Mr. Holland: Nothing other than what we've already put on the record before." N.T. 9/18/09, pp. 4-5. (emphasis added)

The appellate court's "standard of review of a trial court's charge to the jury is deferential; ' [i]n reviewing a trial court's charge . . . , an appellate court must not take the challenged words or passage out of context of the whole charge, but must look at the charge in its entirety.'" *Rettger v. UPMC Shadyside,* 991 A.2d 915, 931 (Pa. Super. 2010), quoting *Ettinger v. Triangle-Pacific Corp.,* 799 A.2d 95, 106 (Pa. Super. 2002).

"In examining these instructions, [the appellate court's] scope of review is to determine whether the trial court committed clear abuse of discretion or error

of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental." *Stewart v. Motts,* 539 Pa. 596, 606, 654 A.2d 535, 540 (1995). (case citations omitted)

A review of the entire charge in the present case, including the court's clarifying remarks, clearly demonstrates that the charge was not inadequate, unclear, or misleading. Therefore, a new trial is not warranted on this issue.

## D. THE COURT DID NOT ERR IN FAILING TO DIRECT A VERDICT AS TO TROVATO'S EMPLOYMENT STATUS

### 1. *The Motion for Directed Verdict Was Untimely*

Plaintiff asserts that the court erred in failing to direct a verdict on the issue of defendant Trovato's employment status, *i.e.,* that he was an independent contractor and not a DRPA employee. Trovato argues that this issue is waived because (1) plaintiff did not timely request a directed verdict, and (2) the request for a directed verdict was made after the case had been sent to the jury and occurred during their deliberations. At trial, the court

denied the motion for directed verdict because it was untimely.

The following transpired while the court and the parties discussed the two jury questions[10] regarding employee versus independent contractor status that formed the basis for the workers' compensation issues discussed above.

"Mr. Holland [plaintiffs attorney]: The argument is that defendant is aligning defendant Trovato with Stumpo [Mr. Stumpo is a DRPA employee]; that he took orders from Stumpo; and he was nothing but another set of hands.

"Quite frankly, I move for a directed verdict to take the issue away from the jury and tell them he is an independent contractor, because the defendant hasn't met their burden on that issue.

"The Court: Well—

"Ms. Naples [defendant's attorney]: I think it is untimely.

"The Court: It's too late for a directed verdict at this point, counselor. The request for directed verdict, this is not time." N.T. 9/18/09, p. 17.

"At the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any

---

10. Please tell us the definition 'employee' versus 'independent contractor' that was stated yesterday. Can we review on document or transcript?

"What are implications of the decision of whether Trovato was an employee or independent contractor? What is legal context? Are we deciding between these two opinions?" Court exhibit 1.

party." Pa.R.C.P. 226(b). Although "[a] verdict may be directed at any time before the jury's verdict is received," "the timing of the direction by the trial judge of a directed verdict is within his discretion," *Bethay v. Philadelphia Housing Authority,* 271 Pa. Super. 366, 382, 413 A.2d 710, 718 (1979). The trial court in *Bethay* did not abuse its discretion in allowing an additional defendant to move for a directed verdict after all of the parties had completed their closing arguments. In the present case, however, the motion for a directed verdict came much later—while the jury was actually deliberating.

Our Supreme Court criticized a trial court for entering a verdict after the jury finished its deliberations in *Pardee v. Orvis,* 103 Pa. 451 (1883). There, "the jury brought in a sealed verdict for the defendant, which, when handed to the court, the court refused to accept, and by direction of the court a verdict was entered of record 'for plaintiff by direction of the court.'" 103 Pa. at 455. The Supreme Court upheld the directed verdict because the only issue submitted to the jury was solely one of law for which there could be only one correct answer, to wit, the location of the boundary line between Clinton and Centre counties, although the Supreme Court did not approve of the delay in directing the verdict:

"Under the whole evidence it would have been the duty of the court to set aside a verdict in favor of the defendant below. It would have been more regular to have given the jury binding instructions before sending them out, yet it was not substantial error if he did so instruct them when he discovered they were about to render a verdict contrary to the law of the case." 103 Pa. at 458.

In the present case, however, the issue was one of fact, to wit, whether defendant Trovato was an employee of DRPA or whether he was an independent contractor. This factual issue could have had more than one answer, and it was the function of the jury to make that determination.

In the present case, the motion for a directed verdict came too late. The grounds for the motion were present at the close of the evidence and the plaintiff should have followed normal procedure and made his motion at that time. Therefore, the plaintiff waived consideration of the motion for a directed verdict.

## 2. *Plaintiff Waived Consideration of the Merits of this Issue*

Plaintiff's post-trial memorandum of law did not properly develop any argument regarding the court's refusal to direct a verdict that defendant Trovato was an independent contractor. Plaintiffs memorandum of law never set forth the standard for a directed verdict and never discussed the facts of this case in relation to that standard. *Rettger v. UPMC Shadyside,* 991 A.2d 915, 932 (Pa. Super. 2010) ("The hospital fails, however, to cite a single source of authority to support its analysis or even to set forth a standard of review. Accordingly, we find the hospital's claim waived.").

Plaintiff's memorandum of law argued the directed verdict issue using the wrong standard of review. Plaintiff only mentioned facts favorable to his position and failed to analyze the facts in the light most favorable to Trovato as the non-moving party. See *Kraus v. Taylor,* 710 A.2d 1142, 1146 n.3 (Pa. Super. 1998) (issue waived because appellant's "brief wholly lacks appropriate argu-

ment" because it did not analyze the facts in the light most favorable to the appellee).

Plaintiff failed to develop an appropriate argument on the issue of directed verdict and waived consideration of that issue. *Butler v. Illes,* 747 A.2d 943, 944 (Pa. Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

### 3. *The Directed Verdict Was Properly Denied on the Merits*

"A trial judge may only grant a directed verdict motion where 'the facts are clear and there is no room for doubt.' In so determining, the trial court 'must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.'" *McSorley v. Deger,* 905 A2d 524, 528 (Pa. Super. 2006) quoting *Faherty v. Gracias,* 874 A.2d 1239, 1246 (Pa. Super. 2005). (citations omitted)

"Where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof." *Leibowitz v. H.A. Winston Company,* 342 Pa. Super. 456, 464, 493 A.2d 111, 115 (Pa. Super. 1985), quoting *Beary v. Pennsylvania Electric Co.,* 322 Pa. Super. 52, 57, 469 A2d 176, 179 (1983).

Moreover, the law is clear that a trial judge may not direct a verdict against a defendant where the determination of liability is founded upon oral testimony. *Kopar*

*v. Mamone,* 419 Pa. 601, 603, 215 A2d 641, 642 (1966). "From time immemorial, it has been the province of the jury in trespass cases, where oral testimony is concerned, to pass upon the credibility of witnesses, even though uncontradicted by defendant witnesses or even though the defendant introduces no testimony at all." *Id.,* 419 Pa. at 603, 215 A.2d at 642-43, quoting *Dorn v. Leibowitz,* 387 Pa. 335, 340, 127 A.2d 734, 737-38 (1956).

A directed verdict was entirely improper in the present case because the issue of whether Trovato was an independent contractor or a DRPA employee was a hotly disputed factual issue. Both parties presented an abundance of evidence supporting their positions. It would have been reversible error for the trial court to decide the issue as a matter of law. Instead, the court rightfully let the jury decide the matter. It is significant that plaintiff's amended post-trial motion did not challenge the sufficiency of the evidence to support the jury's determination that Mr. Trovato was a DRPA employee.

## E. PLAINTIFF WAIVED ANY ISSUE REGARDING A CHARGE ON SAFETY REQUIREMENTS AND GENERAL NEGLIGENCE

Plaintiff's Pa.R.A.P. 1925(b) statement states that he is entitled to a new trial because the trial court erred by "failing or refusing to charge the jury on evidence of general negligence when the evidence showed that the defendant failed to comply with safety requirements." The court assumes that plaintiff is merely restating paragraph 6 of his amended post-trial motion which stated:[11]

---

11. If the court's assumption is incorrect, plaintiff waived this issue because the issue set forth in the 1925(b) statement does not appear in

"(6) The court also refused to consider plaintiff's argument that the failure to comport with safety requirements such as using a tag man or having a certification for operating a forklift was 'some evidence of negligence' for a charge less than negligence per se."

Plaintiff waived the issue contained in paragraph 6 of his amended post-trial motion because his post-trial memorandum of law did not contain any argument on that issue. *Jackson v. Kassab,* 812 A.2d 1233, 1235 (Pa. Super. 2002) ("common sense mandates that any issue raised in a motion for post-trial relief must be briefed and argued to the trial court. Failure to set forth an argument in briefs filed in the court in support of post-trial motions constitutes a failure to preserve the issue or issues not argued"), *allocatur denied,* 573 Pa. 698, 825 A.2d 1261 (2003).

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Superior Court should affirm the judgment entered in favor of defendant Carl Trovato by this court's order of December 11, 2009.

---

plaintiff's amended post-trial motion. See *Diamond Reo Truck Company v. Mid-Pacific Industries Inc.,* 806 A.2d 423, 430 ("Post-trial motions and 1925(b) statements serve different functions and are not synonymous with each other. The failure to file post-trial motions cannot be excused or replaced by the filing of a 1925(b) statement. Thus, issues that are waived for failure to file post-trial motions or for other reasons cannot be revived or saved simply by raising those issues in a 1925(b) statement.").